Opinion
' Statement of Facts
KAY, P. J.
Appellant was charged with violating Penal Code sections 245, subdivision (a)(1), 242, 664/484, and Vehicle Code section 23222, subdivision (a). During voir dire, defense counsel exercised seven peremptory challenges. Two of those seven challenges were used to remove Chinese *Supp. 14 persons from the jury. When counsel attempted to excuse a third Chinese person from the jury, the trial judge initiated proceedings pursuant to People v. Wheeler (1978) 22 Cal.3d 258 [148 Cal.Rptr., 583 P.2d 784],
At the Wheeler hearing, defense counsel informed the court that he excused the first Chinese person, Ms. Hong, because she had indicated that she had time problems with employment. Ms. Hong also had to pick up her children in the middle of the afternoon. Counsel said that he believed that Ms. Hong was not going to pay attention to the case because of her other concerns. He explained that he had challenged the second Chinese person, Mr. Uang, because he perceived that Mr. Uang had a language problem. He gathered this from Mr. Uang’s responses to the questions the trial judge asked. Defense counsel told the court that he wished to dismiss the third Chinese juror, Ms. Chang, because she was a computer programmer. According to him, as a matter of personal style, he never permits computer programmers to sit on criminal trials.
Having heard counsel’s purported reasons for exercising his peremptory challenges against the three prospective Chinese jurors, the court found that counsel was attempting to exclude Chinese persons from the jury. The trial court then denied counsel’s challenge to Ms. Chang but informed him that it would allow other peremptory challenges. After further proceedings, the panel was sworn.
Appellant then moved for a mistrial based on the trial court’s refusal to dismiss the jurors already selected and to quash the remaining venire. The prosecutor informed the judge that he had no objection to defense counsel’s challenge to Ms. Chang. The prosecutor also stated that, in any case, he believed that the remedy for a Wheeler violation was that the jurors already selected be dismissed and the remaining venire be quashed. The trial court denied the motion for a mistrial and informed both counsel that Ms. Chang would remain on the jury.
The jury convicted appellant of violating Penal Code sections 245, subdivision (a)(1), and 242. Appellant made a motion for new trial arguing that the court erred in denying appellant’s peremptory challenge to Ms. Chang and by failing to dismiss the entire panel of jurors. The court denied the motion.
Discussion
I. The Trial Court Committed No Error When It Objected on Its Own Motion to Appellant’s Use of Peremptory Challenges.
In People v. Wheeler, supra, 22 Cal.3d 258, the California Supreme Court held that the California Constitution prohibits litigants from using their *Supp. 15 statutory right to peremptory challenges to exclude prospective jurors on the basis of group bias: “We conclude that the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to a trial by jury drawn from a representative cross-section of the community under article I, section 16, of the California Constitution.” (Id. at pp.276-277.)
Generally, when one of the parties appears to be exercising peremptory challenges to remove prospective jurors on the basis of group bias, the other party requests that the court conduct a Wheeler hearing. If the party asserting group bias is able to establish a prima facie case that the other party is exercising peremptory challenges to exclude members of a cognizable group, then the court orders the challenger to explain his reasons for challenging each of those prospective jurors. (Wheeler, supra, 22 Cal.3d at p. 280.)
In the present case, however, the trial court initiated the Wheeler proceedings on its own motion and asked defense counsel to explain why he had challenged each of the Chinese jurors. Appellant contends that the trial court had no standing to object, since the prosecution made no objection to the challenge. We disagree. While the Wheeler court may have contemplated that one or the other of the parties would initiate the process by objecting to the discriminatory use of peremptory challenges, the court noted that the right to an impartial jury drawn from a cross-section of the community is part of the “American system” or “American tradition.” (Wheeler, supra, 22 Cal.3d at p. 272.) The courts have a responsibility to enforce this guaranty. (Ibid. ) Given this posture, the trial court below was inherently empowered to initiate a Wheeler proceeding on its own motion when it perceived that one of the litigants appeared to be challenging prospective jurors because of race.
“It apparently cannot be repeated too often for the guidance of a part of the legal profession that a judge is not a mere umpire presiding over a contest of wits between professional opponents, but a judicial officer entrusted with the grave task of determining where justice lies under the law . . . .” (Estate of Dupont (1943) 60 Cal.App.2d 276, 290 [140 P.2d 866]; see, also, People v. Butterfield (1940) 40 Cal.App.2d 725, 731 [105 P.2d 628].)
Additionally, if the court were to permit litigants to use race as a basis for their peremptory challenges, it might well engender disrespect for the judicial process and undermine the credibility and effectiveness of the courts. Given these considerations, we see no reason that a trial court should be *Supp. 16 required in all cases to sit by unless and until one of the lawyers objects. Here, although defendant had challenged each of the prospective Chinese jurors, the prosecution was unconcerned with the possibility that defense counsel was attempting to eliminate all Chinese people from serving on the jury. To protect the legitimacy of the judicial system, the courts must ensure that persons are not excluded from jury service based on their race. Thus, the trial court did not err when it initiated Wheeler proceedings on its own initiative.
II. The Trial Court Did Not Err When it Found Appellant’s Peremptory Challenges Were Being Used to Systematically Exclude Asians
According to Wheeler, there must be a prima facie showing of discrimination. Assuming that there exists a prima facie showing of discrimination, the burden shifts to the attorney to demonstrate that the peremptory challenge or challenges were not based on group bias. To sustain this burden, the party must satisfy the court that the challenges were reasonably relevant to the case at bar on grounds other than group discrimination. The trial court must then determine whether it finds the reasons offered to be credible or merely a pretext to disguise group bias. (Wheeler, supra, 22 Cal.3d 258, 280-282.)
The Wheeler court specifically placed the determination whether the party’s reasons are nondiscriminatory in the discretion of the trial court: “[W]e rely on the good judgment of the trial courts to distinguish bona fide reasons for such peremptories from sham excuses belatedly contrived to avoid admitting acts of group discrimination.” (Wheeler, supra, 22 Cal.3d at p. 282.) Appellant claimed that he challenged Ms. Hong because she indicated time problems with employment and because she had to take care of her children causing him to believe that she would not pay attention to the case. Another prospective juror, a non-Asian, indicated that she was under much stress and pressure and told the court that she would have difficulty concentrating on the trial. Appellant’s counsel did not challenge this juror when he had the opportunity to do so.
Appellant’s counsel asserted that he challenged Mr. Uang because he perceived a language problem. Appellant contended that Mr. Uang requested that questions be repeated several times and did not respond accurately to questions asked of him. The court’s questions and Mr. Uang’s answers follow:
“The Court: Yes sir. Do you have any children?
“Prospective Juror Uang: Two children.
*Supp. 17 “The Court: Adults?
“Prospective Juror Uang: No, boys, two boys.
“The Court: How old are they?
“Prospective Juror Uang: One is 19 and one 14.
“The Court: Do they work?
“Prospective Juror Uang: No work.
“The Court: What part of the city do you live in, sir?
“Prospective Juror Uang: I live on Balboa, San Francisco.
“The Court: In the Richmond?
“Prospective Juror Uang: Yeah, Richmond.”
This colloquy between the court and Mr. Uang constituted the entire proceeding from which counsel determined that Mr. Uang had a language problem. Based on the record, he apparently comprehended the questions the court asked of him.
Finally, with regard to the challenge to Ms. Chang, appellant’s counsel informed the court that he never allows computer programmers to remain on a jury in criminal trials. He explained that this was a matter of personal bias.
Having heard counsel’s explanation, the trial court found that counsel was exercising his peremptory challenges to prevent Chinese people from being on the jury. The reasons given by appellant’s counsel for his decisions to challenge each of the three prospective Chinese jurors are not so compelling as to persuade us that the judge’s refusal to accept these explanations constituted an abuse of discretion. Thus, the trial court committed no error when it determined that appellant’s counsel had been exercising peremptory challenges to exclude Chinese people from the jury.
III. The Trial Court Erred When It Refused to Dismiss the Venire After Finding That Defense Counsel Challenged Jurors for Racial Reasons
In the Wheeler case, the California Supreme Court developed a remedy to be applied upon the trial court’s determination that counsel has exercised peremptory challenges to exclude members of a cognizable group. The court must dismiss the jurors already selected and quash the remaining venire. The court reasoned that this remedy provided the complaining party with a venire which has not already been stripped of the members of the cognizable group. The jury selection process begins anew upon a finding of *Supp. 18 discrimination in the jury selection process. (Wheeler, supra, 22 Cal.3d 258, 282.) Employing mandatory language, the court instructed the trial judge to dismiss the jury and to quash the venire: “If the court finds that the burden of justification is not sustained as to any of the questioned peremptory challenges, the presumption of their validity is rebutted. Accordingly, the court must then conclude that the jury as constituted fails to comply with the representative cross-section requirement, and it must dismiss the jurors thus far selected. So too it must quash any remaining venire, since the complaining party is entitled to a random draw from an entire venire — not one that has been partially or totally stripped of members of a cognizable group by the improper use of peremptory challenges.” (Wheeler, supra, 22 Cal.3d at p. 282, italics added.)
We note that not all jurisdictions have followed the Wheeler remedy exclusively. The Supreme Court of Massachusetts has invested trial courts with the power to fashion alternative relief in such cases, should they choose to do so. (Com. v. Reid (1981) 384 Mass. 237, 255 [424 N.E.2d 495].) “[T]he judge has the authority to fashion relief without declaring a mistrial. In Soares, we suggested that where no blacks remained on the venire, dismissal was an appropriate remedy. We did not hold that dismissal of the entire venire was the only appropriate relief. Such a limitation on the trial judge’s ability to respond in these circumstances would place in the hands of litigants the unchecked power to have a mistrial declared based on their own misconduct. It would be a reproach to the administration of justice were we to sanction such a result. [Citation.]” (Reid, supra, 384 Mass, at p. 255 [424 N.E.2d at p. 500].) The Massachusetts court criticized the adoption of a per se approach such as the one in Wheeler as too rigid, stating that the trial judge can cope with all the various situations as they arise. (Ibid.)
The trial judge below employed a remedy for the Wheeler violation sanctioned in Massachusetts, but not in California. Much though we may admire the flexible alternative remedy fashioned by the Massachusetts courts, we feel bound by the mandatory language in Wheeler. Thus, we are obliged to reverse the judgment of conviction.
Chesney, J., and Bea, 1, concurred.