104 Cal.Rptr.2d 450 (2001)
87 Cal.App.4th 162
The PEOPLE, Plaintiff and Respondent,
v.
Edward Charles WILLIS, Defendant and Appellant.
No. B135755.
Court of Appeal, Second District, Division One.
February 16, 2001.
Review Granted June 13, 2001.
*452 Tara M. Mulay, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and April S. Rylaarsdam, Deputy Attorneys General, for Plaintiff and Respondent.
*451 ORTEGA, Acting P.J.
Edward Charles Willis appeals from the judgment entered after his conviction by jury of possessing cocaine with seven prior strike convictions. (Health & Saf.Code, § 11350, subd. (a); Pen.Code, §§ 667, subds. (b)-(i); 1170.12; all further undesignated section references are to the Penal Code.) Willis received a 25 years-to-life sentence.
Among other claims, Willis contends (I) the trial court committed reversible error in refusing to grant a mistrial after twice finding, on the prosecutor's motions, that Willis' trial counsel exercised peremptory challenges to exclude jurors based on race, in violation of People v. Wheeler (1978) 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 and Batson v. Kentucky (1986) 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. The trial court, at the prosecution's request, refused to quash the jury venire, upheld Willis' counsel's peremptory challenges, and permitted the case to be decided by a jury from which Willis' counsel systematically excluded all but three White males.
We agree with Willis and reverse the judgment. Because of our ruling, we need not address most of Willis' other claims.[1] However, (II) we reject Willis' claim of evidentiary insufficiency.

FACTS
At about 1:20 a.m. on March 23, 1999, Long Beach Police Officers Roger Woods and Scott Destefano were on patrol. They saw Willis standing at a gas station's cashier window. They approached Willis. *453 Woods asked Willis if he was on parole or probation. Willis replied he was on parole for robbery. Woods asked Willis if Willis had anything the officer should know about. Willis replied he had a pipe. Woods left the patrol car and began searching Willis as Destefano radioed in the location. Woods found a cocaine pipe with white residue and placed it on the patrol car's front bumper as he continued to search. In Willis' shirt pocket, Woods found a baggie with several small white crystals attached to Willis' glasses. Willis looked at the baggie and said, "[T]hat's the real thing." Woods asked if Willis meant "there's rock cocaine in that[?]" Willis replied, "[Y]eah." Woods handed the baggie to Destefano, who noticed it contained several small pieces of rock cocaine. Woods arrested Willis. The officers forgot about the cocaine pipe, which was lost on the drive to the station. Destefano booked the baggie and its contents into evidence. At the station, Willis asked if he "gave [the officers] some information would [they] be able to help him out[?]" Woods replied, "I couldn't do that."[2]
A police chemist found the crystals in the baggie weighed .05 grams and were cocaine. Pursuant to an order, the chemist split the cocaine and sent .03 grams of it to an independent lab, which confirmed the sample it received was cocaine.
Based on his training and experience with narcotics detectives and users, Woods opined that rock cocaine is usually smoked with a pipe. A single dose is usually between .05 and .10 grams, although sometimes a user may split a .05 gram dose. A useable quantity of cocaine is .05 grams. A .05 gram dose costs about $5.
Willis testified in his own defense. He admitted being on parole for possessing cocaine. He also admitted five robbery, a grand theft, and an assault with a deadly weapon, prior felony convictions. Willis said he had never encountered these two officers before. Willis said the outer jacket where Woods claimed to find the cocaine had been loaned to him by a friend earlier that evening. Willis had put his glasses in the pocket. Willis said Woods first ordered him to put his hands on the patrol car hood and immediately began searching him without asking if he was on probation or parole. Woods found Willis' identification and gave it to Destefano. A radio check disclosed Willis' parole status. One officer ordered Willis to remove the jacket. When Willis did so, the officer shook the jacket, and tobacco, crumbs, and lint fell out. Woods said it looked like cocaine, and put it in a piece of plastic he found on the ground. Willis denied saying, "[T]hat's the real thing." He told the officers the jacket was not his and he knew nothing about the drugs. Willis said he was cooperating with his parole officer, was testing negative for drugs, and was trying to turn his life around. Willis said that when he was using drugs before, .05 grams of cocaine cost $2. Willis denied possessing the pipe.

DISCUSSION

I
During jury selection, after the first group of 12 prospective jurors were seated, but before any further proceedings, Willis' trial counsel, Ken Rutherford, asked to approach the bench. Outside the jury's presence, Rutherford stated: "This panel is not a sample of the community for my client.... I would oppose this panel at this point as it not being reflective of the community at large. [Willis] needs a jury of his peers...." Rutherford continued in a colloquy with the court: "... [T]here appear to be no minorities from the first twelve called to the jury box. There don't appear to be any at all in the large jury panel. [¶] The Court: What minorities are you speaking about? [¶] Mr. Rutherford: *454 In general, Black to be specific. There appear to be no eth[n]ic minorities in the twelve seated. There appear to be maybe one Hispanic or Asian descent in the large group, one Hispanic male in the large group. And I believe that would be a fair representation that the rest would be White individuals. [¶] The Court: Without a further showing of an improper jury ven[ire] selection, the motion is denied."
After Rutherford had used 11 peremptory challenges, the prosecutor asked for a bench conference. Outside the jury's presence, the prosecutor made "a Wheeler motion based on the defense ... kicking male Whites." The prosecutor noted Rutherford had used 7 of his 11 peremptory challenges against male Whites, "and has now left the jury completely female except for one male Black and one male White." An exchange followed: "The Court: Mr. Rutherford? [¶] Mr. Rutherford: Is the court finding a prima facie case? [¶] The Court: You bet."
Rutherford first argued that White males were not a protected class under Wheeler. The court noted Rutherford also had excused a female Hispanic and a female Asian. The court stated, "It seems to me that you are systematically, for racial reasons alone, kicking off male Whites. And who do you think you are for doing that, Mr. Rutherford?" Rutherford denied doing so, and said he had racially neutral reasons for his peremptory challenges, including that the challenged jurors were crime victims and were related to police officers. After the court repeated it had made a prima facie finding of a Wheeler violation, Rutherford offered explanations for each challenged peremptory.
A colloquy followed: "The Court: I find that there is a systematic exclusion of a protected class, male Whites. And [defense counsel] can't do that just as [the prosecutor] can't do that. [¶] So now what do you want me to do about it? [¶] [The prosecutor]: ... [A]t this point obviously the remedy of excusing a panel would only [ ] serve to his benefit because that is what he is seeking to do. At this point I would ask for the court to admonish him to not continue that kind of behavior. And if he does, sanction him if he does so. [11] The Court: You are admonished not to violate Wheeler again. Should you do so, I will impose personal monetary sanctions under [section] 177.35 of the Code of Civil Procedure." Rutherford moved for a mistrial, claiming he should not be left with the remaining members of the original venire, and that the process was depriving Willis of a fair trial. The court denied the motion. Jury selection resumed. The court did not excuse the panel or reseat any of the improperly excused jurors.
Later, the prosecutor made a second Wheeler motion based on Rutherford's using 8 of his next 9 peremptories to strike White males. After demanding explanations, the court again found Rutherford had violated Wheeler. The court sanctioned Rutherford with monetary sanctions, which were stayed and later lifted. Again, the court did not reseat any improperly challenged jurors or quash the venire and begin jury selection again with a new panel. On appeal, neither party challenges the trial court's procedures in ruling on the Wheeler motions or its findings that Rutherford twice violated Wheeler.
Shortly thereafter, Willis asked for new counsel (People v. Marsden (1970) 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44), claiming Rutherford had prejudiced the jury against him. The court denied the motion, saying Rutherford was capable but had acted "illegal[ly] and ... immoral[ly]." The court then denied Willis' self-representation motion (Faretta v. California (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562) and Rutherford's mistrial motion.
"If a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must raise the point in timely *455 fashion and make a prima facie case of such discrimination to the satisfaction of the court____ [¶] ... [¶] Upon presentation of this and similar evidencein the absence of course, of the jurythe court must determine whether a reasonable inference arises that peremptory challenges are being used on the ground of group bias alone.... [¶] If the court finds that a prima facie case has been made, the burden shifts to the other party to show if he can that the peremptory challenges in question were not predicated on group bias alone.... [¶] If the court finds that the burden of justification is not sustained as to any of the questioned peremptory challenges, the presumption of their validity is rebutted. Accordingly, the court must then conclude that the jury as constituted fails to comply with the representative cross-section requirement, and it must dismiss the jurors thus far selected. So too it must quash any remaining venire.... Upon such dismissal a different venire shall be drawn and the jury selection process may begin anew." (People v. Wheeler, supra, 22 Cal.3d at pp. 280-282, 148 Cal.Rptr. 890, 583 P.2d 748, emphasis added, fns. omitted; Batson v. Kentucky, supra, 476 U.S. at pp. 93-98, 106 S.Ct. 1712; People v. Turner (1994) 8 Cal.4th 137, 164-165, 32 Cal.Rptr.2d 762, 878 P.2d 521.) Wheeler "error is prejudicial per se ... `[A] conviction by a jury so selected must be set aside.' [Citations.]" (People v. Wheeler, supra, 22 Cal.3d at p. 283, 148 Cal.Rptr. 890, 583 P.2d 748.)
A two-fold rationale supports the Wheeler/Batson rule. "[I]t is well established that the use of peremptory challenges to remove prospective jurors solely on the basis of a presumed group bias, based upon membership in a cognizable group, violates both the federal and state Constitutions. (Batson v. Kentucky [, supra,] 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69; People v. Wheeler, supra, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 .) `"Group bias is a presumption that jurors are biased merely because they are members of an identifiable group,"` distinguished on grounds such as race, religion, ethnicity, or gender. [Citations.]" (People v. Crittenden (1994) 9 Cal.4th 83, 115, 36 Cal.Rptr.2d 474, 885 P.2d 887.)
"In a now-familiar series of decisions beginning with People v. Wheeler, supra, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748, [the California Supreme Court] ha[s] made it clear that the courts of this state cannot tolerate the abuse of peremptory challenges to strip from a jury, solely because of a presumed `group bias,' all or most members of an identifiable group of citizens distinguished on racial, religious, ethnic, or similar grounds. Such an abuse, we have repeatedly held, violated the defendant's right to trial by a jury drawn from a representative cross-section of the community under article I, section 16, of the California Constitution. [Citations.]
"In addition, the United States Supreme Court has recently denounced the same pernicious practice as a violation of the federal equal protection clause. In Batson v. Kentucky, supra, 476 U.S. [79], 106 S.Ct. 1712, Black defendant was tried and convicted by an ail-White jury after the prosecutor exercised peremptory challenges against the only four Blacks in the venire. The defendant had unsuccessfully objected on the dual grounds of violation of his Sixth Amendment right to a jury drawn from a representative cross-section of the community and his Fourteenth Amendment right to equal protection of the laws. Reserving decision on the first ground, the United States Supreme Court struck down the practice on the second ground....
"The high court held that `the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.' (Batson v. Kentucky, supra, 476 U.S. [ ] at p. [89], 106 S.Ct. 1712 ....) The court reasoned that `Racial discrimination in selection of *456 jurors harms not only the accused whose life or liberty they are summoned to try,' but also reflects unfairly on the fitness and impartiality of those who are struck from the jury for that reason. (Id. at p. [87]....) Indeed, `The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community.' (Ibid.) `In view of the heterogeneous population of our nation, public respect for our criminal justice system and the rule of law will be strengthened if we ensure that no citizen is disqualified from jury service because of his race.' (Id. at p. [99] ....)
"Although the high court did not directly address the contention that the practice also violates the defendant's right to a representative jury, it recognized the concerns protected by that right. Thus the court observed that `The petit jury has occupied a central position in our system of justice by safeguarding a person accused of crime against the arbitrary exercise of power by prosecutor or judge.... For a jury to perform its intended function as a check on official power, it must be a body drawn from the community. [Citations.] By compromising the representative quality of the jury, discriminatory selection procedures make "juries ready weapons for officials to oppress those accused individuals who by chance are numbered among unpopular or inarticulate minorities.'" (Id. at p. [86] & fn. 8....)
"The United States Supreme Court then adopted a procedure for enforcing its new rule.... Finally, the court rejected the state's contention that its new rule would either undermine the purpose of the peremptory challenge or create serious administrative difficulties. [Citation.] This is essentially the same procedure, of course, that [the California Supreme Court] adopted in Wheeler. (22 Cal.3d at pp. 280-282, 148 Cal.Rptr. 890, 583 P.2d 748.)" (People v. Turner (1986) 42 Cal.3d 711, 715-717, 230 Cal.Rptr. 656, 726 P.2d 102.) Thus, although Wheeler focused exclusively on the right of the parties to have their case tried by an impartial jury selected without impermissible discrimination, Batson relied on the equally fundamental right of jurors not to be excluded on such impermissible grounds, and on the obligation of the court system to proactively prevent, and avoid the appearance of even unintentional acquiescence in, such invidious discrimination. The California Supreme Court expressly acknowledged the dual bases of the Wheeler/Batson rule.
Three rules, all unchallenged by the parties, have emerged from the Wheeler/Batson principles. First, both the prosecution and defense are bound by those principles. (Georgia v. McCollum (1992) 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33; People v. Wheeler, supra, 22 Cal.3d at p. 282, fn. 29, 148 Cal.Rptr. 890, 583 P.2d 748; People v. Lopez (1991) 5 Cal.Rptr.2d 775, 3 Cal.App.4th Supp. 11, 16-17.) Neither party may violate the Wheeler/Batson prohibitions. Thus, both parties may raise the issue by claiming the opponent is violating the prohibitions. Indeed, the fundamental nature of the protected rights and the judicial system's obligation to protect them permit the court to raise the issue on its own motion. (Id. at pp. 14-16, 5 Cal.Rptr.2d 775.) This rule of reciprocity is consistent with both rationales underlying the Wheeler/Batson principles. Thus, the trial court correctly applied the principles to Willis.
Second, if the principles are violated, the only approved remedy in California courts is to quash the entire venire, excuse it, and begin jury selection anew with a new venire. (People v. Wheeler, supra, 22 Cal.3d at p. 282, 148 Cal.Rptr. 890, 583 P.2d 748; People v. Smith (1993) 21 Cal. App.4th 342, 344-346, 25 Cal.Rptr.2d 850; People v. Lopez, supra, 5 Cal.Rptr.2d 775, 3 Cal.App.4th Supp. at pp. 17-18.)[3] This *457 lone remedy vindicates both sets of rights supported by the Wheeler/Batson principles, but experience has exposed problems with this unitary solution. Restarting jury selection with a new venire punishes the offending party by preventing it from trying its case to a jury wrongly selected by that party to be biased in its favor. However, the remedy also rewards the offending party by letting it try jury selection a second time and try and obtain a more sympathetic panel. This single remedy thus encourages both parties, if dissatisfied with the venire or the petit jury as it develops during the selection process, to violate the rule so they can try and mold a new panel more to their liking. In addition to encouraging rather than deterring Wheeler/Batson violations, the single remedy forces busy trial courts to prolong jury selection by beginning again, thus compounding court congestion and frustrating trial judges from efficiently managing their crowded calendars.
An alternative approach would give trial judges discretion to fashion additional remedies for Wheeler/Batson violations. One alternative would be to disallow the improper challenge(s) and seat the wrongfully excluded juror(s). This remedy fully vindicates all the rights supported by the principles, avoids the problems outlined in the preceding paragraph, yet permits trial judges to employ the new-venire alternative when that remedy is more appropriate. Alternative forms of jury selection may be used to keep parties from being prejudiced by jurors returned to the panel after an improper challenge is disallowed. (Cf. People v. Harris (1992) 10 Cal.App.4th 672, 12 Cal.Rptr.2d 758 [having all peremptory challenges in chambers violates defendant's right to a public trial], with People v. Williams, supra, 31 Cal.Rptr.2d 769, 26 Cal.App.4th Supp. at pp. 7-8 [proper to make each challenge at sidebar to permit opponent to make a Wheeler motion, after which the use of and party making any peremptory was announced in open court].)
A second potential alternative remedy, the one chosen here by the trial court at the prosecution's urging, would be imposing sanctions on the offending party. Here, the court later vacated the sanctions, thus making them meaningless and effectively providing no remedy at all for the violation. Moreover, unless combined with one or both of the remedies discussed above, this alternative completely fails to vindicate the juror's fundamental right not to be wrongly excluded from participation, and permits the case to be tried by an intentionally unrepresentative and biased jury. Thus, this remedy permits a wrongly selected jury to actually resolve the case, giving the appearance that the court system approves of this process, rather than having the system prevent such a result.
However, despite the merits or drawbacks of alternative remedies, to date our Supreme Court has unequivocally stated that no alternatives are available. Violations of the Wheeler/Batson rule must be remedied only by quashing the venire and beginning jury selection anew with a fresh venire. Thus, we are compelled to find the trial court erred in violating this mandate. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937.)
The third rule is that any Wheeler/Batson violation not remedied in the trial court by the mandatory remedy of quashing the venire and beginning jury *458 selection anew with a new panel requires reversal regardless of its prejudicial impact on the parties. (People v. Wheeler, supra, 22 Cal.3d at p. 283, 148 Cal.Rptr. 890, 583 P.2d 748; People v. Smith, supra, 21 Cal.App.4th at p. 345, 25 Cal.Rptr.2d 850.) Again, whether we like it or not, this unequivocal rule announced by our Supreme Court mandates reversal here. (Auto Equity Sales, Inc. v. Superior Court, supra, 57 Cal.2d at p. 455, 20 Cal. Rptr. 321, 369 P.2d 937.)
Wheeler noted: "Additional sanctions are proposed in the literature ..., but we have no present grounds to believe that the above procedure will be ineffective to deter such abuses of the peremptory challenge. If experience should prove otherwise, it will be time enough then to consider alternative penalties, [¶] ..." (People v. Wheeler, supra, 22 Cal.3d at p. 282, fn. 29, 148 Cal.Rptr. 890, 583 P.2d 748 .) We think the facts of this case and the continuing struggles of trial and appellate courts to implement the Wheeler rules demonstrate the need for the Supreme Court to revisit its opinion.
The People argue we should affirm because, they claim, Rutherford invited the error. They support this argument by picking out Rutherford's retort to the court that if the court did not believe his explanations it could grant the prosecutor's motion. First, that statement came while the court was exploring the reasons for particular challenges. Second, the People's argument distorts the invited error doctrine. The "error" a party must have "invited" is the court's error, not its own. The prosecutor, not Rutherford, suggested the erroneous procedure. In any event, the invited error doctrine does not apply to Wheeler motions. (People v. Tapia (1994) 25 Cal.App.4th 984, 1028-1029, 30 Cal.Rptr.2d 851 [doing so would fail to vindicate the violation of the juror's fundamental right not to be excluded from participation because of wrongful racial discrimination].)
For these reasons, the trial court prejudicially erred when it did not quash the venire after twice finding Rutherford violated the rule. We must reverse the resulting judgment.

II
We reject Willis' claim that the evidence is insufficient to support the judgment. Willis claims there was insufficient evidence that he possessed a useable quantity of the drug. He attacks the weight of the officer's opinion.
"`The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonable deduce from the evidence. [Citation.]
"`Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]' [Citation.]" (People v. Ochoa (1993) 6 Cal.4th 1199, 1206, 26 Cal.Rptr.2d 23, 864 P.2d 103.) "When undertaking such review, our opinion that the evidence could reasonably be reconciled with a finding of innocence or a lesser degree of crime does not warrant a reversal of the judgment. [Citation.]" (People v. Hill (1998) 17 Cal.4th 800, 849, 72 Cal.Rptr.2d 656, 952 P.2d 673.)
The officer's opinion was based on training, experience with other drug users, and conversations with more experienced and better trained narcotics officers. His opinion *459 that Willis possessed a useable quantity of cocaine was not inherently irrational. It was for the jury to decide whether to accept the officer's opinion, particularly absent conflicting evidence. Sufficient evidence supported the conviction.

DISPOSITION
We reverse the judgment and remand the case for a new trial.
MIRIAM A. VOGEL, J., concurs.
MIRIAM A. VOGEL, J., separately concurring.
I agree with the lead opinion but write separately to dispute the dissent's statement that this case does not involve racial discrimination by the government, (p. 460, post.) By its failure to take the appropriate corrective action, the trial court placed its imprimatur on a party's discriminatory conduct. That the party in this case happened to be the defendant has nothing to do with the price of tomatoes.
MALLANO, J., Dissenting.
During jury selection, defendant violated People v. Wheeler (1978) 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 by improperly exercising peremptory challenges against White males. Nevertheless, he was convicted by a jury, which consisted of five White females, two Asian females, one African American male, a male who appeared to be White or Hispanic, and three White males. He appeals, claiming that he was denied his federal and California constitutional rights because he was tried by a jury selected on the basis of racial discrimination, notwithstanding it was his own doing. I would not reverse on this ground.
Although Wheeler is applicable to the defense as well as the prosecution (22 Cal.3d at p. 282, fn. 29, 148 Cal.Rptr. 890, 583 P.2d 748), it does not mandate the result defendant seeks. In that landmark case, the prosecution improperly used peremptory challenges to exclude African Americans from the jury. According to Wheeler, when that occurs, "the court must then conclude that the jury as constituted fails to comply with the representative cross-section requirement, and it must dismiss the jurors thus far selected." (Id. at p. 282, 148 Cal.Rptr. 890, 583 P.2d 748.) The Wheeler court offered that "[additional sanctions are proposed in the literature (fn.25, ante), but we have no present grounds to believe that the above procedure will be ineffective to deter such abuses of the peremptory challenge. If experience should prove otherwise, it will be time enough then to consider alternative penalties." (Id. at p. 282, fn. 29, 148 Cal.Rptr. 890, 583 P.2d 748.)
In People v. Williams (1994) 31 Cal. Rptr.2d 769, 26 Cal.App.4th Supp. 1, defense counsel violated Wheeler in relation to three separate jury panels. On the first and second occasions, the jury panels were dismissed. On the third occasion, when defense counsel again violated Wheeler, the trial court denied the peremptory challenge and seated the challenged juror. Distinguishing the Appellate Department of the Superior Court of San Francisco decision in People v. Lopez (1991) 5 Cal. Rptr.2d 775, 3 Cal.App.4th Supp. 11, the Appellate Department of the Superior Court of Los Angeles in Williams found no error. (31 Cal.Rptr.2d 769, 26 Cal. App.4th Supp. at p. 10.)
Support for Williams is found in the Supreme Court case of People v. Pride (1992) 3 Cal.4th 195, 10 Cal.Rptr.2d 636, 833 P.2d 643. There, during the selection of a jury in a death penalty case, the trial court used the wrong standard in ruling on challenges for cause. It observed the standard of Witherspoon v. Illinois (1968) 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, rather than the superceding one of Wainwright v. Witt (1985) 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841. When the trial court had opined that Witt seemed to have changed Witherspoon, defense counsel disagreed. The Supreme Court concluded that the appellant was estopped to argue on appeal that the trial court applied *460 the erroneous standard because the error "occurred at the request and with the approval of the defense." (People v. Pride, supra, 3 Cal.4th at p. 228, 10 Cal.Rptr.2d 636, 833 P.2d 643.) Similarly, here, defendant ought to be estopped from complaining that the jury which convicted him had fewer White males than it should have had, as that was his own doing. Defendant contends that he did not invite the trial court's alleged error because he asked the trial court to dismiss the jury panel and the court's error was not complying. While this may be literally true, defendant is ignoring his own role in violating Wheeler, thereby creating the grounds upon which he requested that the jury be dismissed. Because defendant's wrongdoing was the cause of the error, if any, he is estopped from arguing that the trial court erred in not discharging the jury.
Wheeler is distinguishable as to the issue of sanctions as it dealt with prosecutorial misconduct. Here, defendant violated Wheeler and, thus, the prosecution was the aggrieved party. Rather than seeking to dismiss the jury and thereby reward defendant for his misconduct (he was unhappy with the makeup of the jury panel from the outset), the prosecution waived that remedy. Instead, it requested that defendant be admonished to refrain from such behavior and be sanctioned if he failed to do so. The trial court complied in both particulars. I find no error in the trial court allowing the prosecution's waiver.
Defendant contends that People v. Tapia (1994) 25 Cal.App.4th 984, 30 Cal. Rptr.2d 851 precludes the application of the invited error doctrine in a Wheeler context. Assuming that the estoppel referred to in Pride may be equated with invited error, I disagree. In Tapia, the trial court misunderstood the nature of its obligations under Wheeler and did not undertake the required inquiry and evaluation of the prosecutor's stated reasons for the exercise of peremptory challenges to three prospective jurors. The trial court asked if it had used the correct standard in ruling on the defense's Wheeler motion, and defense counsel did not respond, even though he had promised to do so.
On appeal, the Tapia court concluded that the doctrine of invited error did not apply. The court stated: "Thus, whether counsel knows it or not, when he rises to make a Wheeler Batson [(Batson v. Kentucky (1986) 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69) ] objection during voir dire examination, he speaks not only on behalf of his client, but he speaks on behalf of those jurors who may be excluded from the jury for racial reasons as well as the community, if his objection is not resolved in the manner require by law. [11] Although, an appellate court's finding of invited error arguably could be said to `judicially' negate the harm caused to the defendant, it would leave unremedied the harm caused to the excluded jurors and to the community. It becomes self-evident, therefore, that the invited-error doctrine would nullify the high court's very rationale for elevating the racially neutral jury right to its lofty position in the hierarchy of federal constitutional rights. Because we live in a multiracial society, deliberate racial discrimination by the government will not be condoned. (Cf. Brown v. Board of Education (1954) 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873[ ].)" (People v. Tapia, supra, 25 Cal.App.4th at p. 1029, 30 Cal.Rptr.2d 851, italics added.)
The rationale of Tapia cannot be applied here. Defense counsel was not speaking on behalf of the White males he improperly excluded from the jury. He was not their championhe was their opponent. And Tapia speaks of not condoning "deliberate racial discrimination by the government" (25 Cal.App.4th at p. 1029, 30 Cal.Rptr.2d 851.) Here, defendant discriminated and seeks to be rewarded for doing so. It is like the child who has murdered his parents and pleads for mercy because he is an orphan.
I would not reverse on Wheeler grounds.
NOTES
[1] After these rulings, the trial court denied Willis' motions to substitute new counsel, and to represent himself, based on his claim that his lawyer's conduct and the court's resulting displeasure, prejudiced him before the jury. On appeal, Willis argues these denials, and the court's alleged prejudice, require reversal. Because we hold the Wheeler error reversible per se, we need not assess if Willis' counsel's conduct prejudiced him.
[2] Willis' motion to suppress evidence (§ 1538.5) was denied. He does not challenge that ruling on appeal.
[3] People v. Williams (1994) 31 Cal.Rptr.2d 769, 26 Cal.App.4th Supp. 1, 8-10, approved the trial court's disallowing the improper peremptory challenge and seating the wrongfully excused juror. There, both sides made repeated Wheeler motions. Two earlier venires had been quashed after the trial court found the defense twice violated Wheeler. When the court again found a defense Wheeler violation, it employed that procedure with the prosecutor's approval. The Appellate Department of the Los Angeles Superior Court also found any error harmless. While we sympathize with both the trial and appellate courts in Williams, and think its analysis should be part of any informed reading on this issue, we respectfully disagree with its holdings that Wheeler permits alternative remedies, or that any resulting error is susceptible of harmless error analysis.