Filed 10/15/14  P. v. Ford CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JAMES FORD, Jr.,<br><br>    Defendant and Appellant. | B248584<br><br>(Los Angeles County<br>Super. Ct. No. NA094337) |

APPEAL from a judgment of the Superior Court of Los Angeles County, James Pierce, Judge.  Affirmed.

California Appellate Project, Jonathan B. Steiner, Executor Director and Ann Krausz for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Stephanie A. Miyoshi, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted defendant and appellant James Ford, Jr. of second degree robbery (Pen. Code, § 211[1]) and second degree commercial burglary (§ 459).  Defendant admitted that he suffered a prior conviction within the meaning of section 667, subdivisions (a) and (b) through (i) and 1170.12, subdivisions (a) through (d), and three prior convictions for which he served a term in prison within the meaning of section 667.5, subdivision (b).  The trial court sentenced defendant to 11 years in state prison. The trial court awarded defendant 125 days of actual custody credit and 18 days of conduct credit.

On appeal, defendant's appointed counsel filed an opening brief in accordance with *People v. Wende* (1979) 25 Cal.3d 436 requesting this court to conduct an independent review of the record to determine if there are any arguable issues.  On December 16, 2013, we gave notice to defendant that counsel had failed to find any arguable issues and that defendant had 30 days within which to submit by brief or letter any grounds of appeal, contentions, or arguments he wished this court to consider. Defendant did not file a responsive brief or letter.

We asked the parties to submit supplemental letter briefs addressing the following questions:  (1)  Did the trial court err when it granted its own motion under *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*) and denied defense counsel's peremptory challenge to prospective juror No. 1?  (2)  If the trial court erred, is the error subject to harmless error analysis or is it reversible per se?  We affirm.

## BACKGROUND

### I.    Charged Offenses

About 5:00 p.m. on December 29, 2012, defendant stood in the parts line at an Autozone store in Long Beach.  Defendant was holding two jugs of oil.  When it was his turn to be helped at the counter, defendant asked store manager Raul Luna for some parts

---

[1]     All statutory citations are to the Penal Code unless otherwise noted.

for a 1969 Pontiac. Customers did not have access to the parts which were kept behind the counter. Luna took the two jugs of oil from defendant and went to retrieve the requested parts. After retrieving the parts, Luna intended to take them and the jugs of oil to the cash register.

When Luna went to retrieve the parts, defendant walked to the front of the store, picked up two jugs of oil from a display, and left the store without attempting to pay for the oil. Luna yelled for defendant to stop. Defendant did not stop, and Luna ran after him. Defendant ran to an alley adjacent to the store where he stumbled and fell. Luna attempted to detain defendant by placing him in a headlock. Defendant, who was bigger than Luna, struggled with Luna, and Luna released him.

Defendant stood up, picked up one of the jugs of oil, and swung the jug at Luna. Luna picked up the second jug and held it up to protect himself. Defendant struck the jug Luna was holding with the jug he was swinging. Defendant ran with the jug. Luna and bystanders pursued defendant and defendant was detained. Luna called the police. When a police officer arrived, he detained and searched defendant. Defendant did not have any money or credit cards.

## II.     Jury Selection

During jury selection, prospective juror No. 1 stated that she lived in Long Beach and was employed as a software engineer. The trial court requested, "One more time?" Prospective juror No. 1 responded, "Software engineer. Married. My husband is a digital illustrator. I have one adult son. He is in college. I did not have any prior jury experience." The trial court asked if she had any "yes" answers to a list of 20 questions asked of all prospective jurors. She responded, "I have one, yes, for number 12. I'm currently in a lawsuit for a car accident." The trial court asked if she had any extraordinarily negative experiences in connection with the lawsuit. Prospective juror No. 1 responded, "A few. It is still in progress." The trial court asked if there was anything about the lawsuit that would "affect this one in any way?" The prospective juror responded, "No."

3

Prospective juror No. 1 further stated that she did not have any other "yes" answers to the list of questions and that she had heard the prosecutor's and defense attorney's voir dire questions and her answers would not differ in any way—apparently from other prospective jurors' answers. She said that she knew of no reason why she could not be completely fair and impartial as a juror.

Defense counsel then used a peremptory challenge to excuse a different prospective juror. After that prospective juror was replaced and examined by the trial court, the prosecutor accepted the panel as constituted. Defense counsel then used a peremptory challenge to excuse prospective juror No. 1. The trial court requested to see counsel at sidebar and said to defense counsel, "I know this sounds ironic because, I believe, you are Asian yourself. I think you have kicked off all Asians in this panel. [¶] I want to know why? Especially the last one." Defense counsel responded, "I think there is a language issue with juror number 1. I think the court has tried two times to ask her to explain what she did. We can't understand what she said what her job was. [¶] It is important that the juror will understand the nuances and she has difficulties with understanding what is going on the law and be able to—it is based on my belief she has a language issue. [¶] I know she is a software engineer and I'm not saying she is not bright. I'm not saying she is not intelligent in her field. I'm saying this may be difficult."

Defense counsel said, "I'm not sure what other Asians you are talking about." He said that he excused prospective juror No. 7 because that prospective juror said that "if there were eleven and he was the one, he would just go ahead and go with the eleven." Also, prospective juror No. 7 believed that if the police had arrested defendant, defendant must have done something. Defense counsel stated that he believed that prospective jurors Nos. 1 and 7 were the only two Asians he had excused.

The trial court disagreed that prospective jurors Nos. 1 and 7 were the only Asians that defense counsel excused, stating that it would identify them if defense counsel wanted. The trial court accepted defense counsel's reasons for excusing prospective juror No. 7. As to prospective juror No. 1, however, the trial court stated, "The fact that I

4

didn't understand what she was saying doesn't mean she has a language problem and so it was more, it was my inability to hear. [¶] She has a very soft voice is why I couldn't understand. It was my problem not hearing not her problem. She understood or she answered all the questions very, very appropriately. [¶] She is highly intelligent. I don't think you can draw an inference because of my hearing problem that she has a problem with language. If anything you could draw the conclusion I have a problem with language not her."

Defense counsel said, "I apologize, Judge. Even though the court is saying the court couldn't hear, I had difficulty understanding what she was saying as to what her job was and she does have a very heavy accent and we only make choices based on a very limited amount of knowledge. [¶] As to what her husband did, I had to actually think about what she said because, I think, because of her accent and, I believe, that she said her husband is a digital illustrator. [¶] I had to think, about it. I'm making this decision based on limited information. Of course, it is based on what I just said to you. [¶] Not only did the court have problems understanding her what she said, I did at first. When she first said, when she first said what she did, I did not understand what she said. [¶] And when she said it a second time, I heard engineer; and, now, obviously, I knew what she said the third time and I think based on the heavy accent, those are the reasons why I'm exercising a peremptory."

The trial court stated that it would not permit defense counsel to use a peremptory challenge to remove prospective juror No. 1. It stated its belief that an accent was not a reason to excuse a juror and found that defense counsel had not given a satisfactory reason to excuse the prospective juror. The trial court further found that defense counsel had used a peremptory challenge to remove at least a third Asian prospective juror and stated that it saw very few, if any, Asian prospective jurors left in the "audience."

Defense counsel objected. He argued, "You are saying heavy accent in and of itself. I'm not saying a heavy accent. I'm saying she has a heavy accent. [¶] It [is] my belief on the answers she gave that, although I'll point out, again, she is bright in her

5

field, this is not her field and so the terminology can only, the terminology is different and I think she would have a difficult time understanding it."

The side bar conference concluded, and jury selection resumed. Defense counsel made further peremptory challenges, and the jury was sworn. During the selection of alternate jurors, defense counsel asked prospective alternate juror No. 1 if she believed there was any reason she would not be a good juror. Juror No. 1 (former prospective juror No. 1) responded, "I think I would be a good juror." The trial court stated, "Alternate number 1. Confusion two number ones here now." After prospective alternate juror No. 1 responded to defense counsel's questions, the alternate jurors were sworn.

Later, defense counsel stated that he wanted to address the trial court's "self-directed . . . *Wheeler* motion." He said that he had looked through his notes and prospective juror No. 7 was the only other Asian prospective juror he had excused. The trial court stated that it was "very difficult to tell" whether a prospective juror was Asian—such a determination could not be made only with reference to the prospective juror's last name, but had to take into account the prospective juror's appearance. It said that it had identified a third prospective juror—prospective juror No. 10—whom it believed was Asian. The trial court said to defense counsel, "I may be wrong. You could probably identify her better than I could. I'll yield to you. All I can do is the best I can do based on the looks that I see in front of me."

The trial court then stated that "there was absolutely no reason" to excuse prospective juror No. 1. It said, "[A]fter listening to you I think you dug a deeper hole for yourself than you were in when you first heard it was foolishness and nonsense in regards to her thick accent being your interpretation that she couldn't understand the English language." The trial court continued, "[T]here was no reason to kick her off except for her ethnicity and, I believe, that is why you did that and I know you are Asian."

Defense counsel expressed doubt that prospective juror No. 10 was Asian. Nevertheless, he explained his reason for excusing that prospective juror. The trial court

6

interrupted, stating that it agreed that there were legitimate reasons for excusing that prospective juror.

Defense counsel asked the trial court the basis for denying his peremptory challenge to prospective juror No. 1 if the trial court agreed that there had been legitimate grounds for using peremptory challenges to excuse prospective jurors Nos. 7 and 10. Defense counsel provided his reasons for excusing prospective juror No. 1. He said that the prospective juror was a software engineer and smart, but that "we would be arguing legal issues in front of this jury." Defense counsel appeared to argue that because the law was not prospective juror No. 1's "area" and given her "thick accent," prospective juror No. 1 would not be a "great juror."

The trial court asked defense counsel if he believed that jurors need to be "versed in criminal law," noting that defense counsel had excused an administrative law judge. Defense counsel stated that had had excused the administrative law judge because he did not want as a juror someone who "sits as a judge." The trial court asked, "Are you telling me if the software engineer was a, if she was a law expert you would keep her on? But she, as a software engineer expert, therefore, you didn't? [¶] [Defense counsel], I caution you, you are digging a bigger hole and the record is not good. There are other software engineers that are currently up there on that jury right now as we speak."

Defense counsel said that juror No. 6—an aerospace engineer—did "not have as thick of an accent as juror number 1." The trial court responded, "She didn't have a thick accent. She had a soft voice. She had a very soft female voice that was hard to hear. It wasn't a thick, thick accent like we had problems with juror number 7 and so forth." The trial court said that it understood defense counsel's concerns with prospective juror No. 7 and that defense counsel legitimately excused that prospective juror, but that as to prospective juror No. 1, "there was nothing, absolutely nothing. She answered questions articulately. She said a whole complete sentence on answers. She didn't chop up the sentences or do anything else. [¶] When she incorrectly thought you were talking to her, juror number 1 remember when you asked juror number 1, alternate number 1 whether or not she thought she would be a good juror and juror number 1 said, 'Oh, I think I would

7

be fine.' [¶] She answered that in correct beautiful English with no thick thick accent. I disagree with you."

Defense counsel said that he disagreed with the trial court as to its characterization of defense counsel's attempted voir dire of prospective alternate juror No. 1. The trial court stated that juror No. 1 and prospective alternate juror No. 1 were in defense counsel's same line of sight, which accounted for the confusion. It said, "I think you are trying to split hairs and, again, if you heard explanations from a D.A. you would be laughing and that is what I kind of am under my breath. [¶] These are silly, silly distinctions you are trying to make. She is a software engineer; therefore, she can't understand the law. If that is true, then . . . we might as well go home." Defense counsel responded, "That is not what I said Judge." The trial court said, "That is basically what you said."

## DISCUSSION

We asked the parties to submit supplemental letter briefs addressing whether the trial court erred when it granted its own motion under *Wheeler, supra,* 22 Cal.3d 258 and denied defense counsel's peremptory challenge to a prospective juror. We also asked the parties to address whether any such error by the trial court is subject to harmless error analysis or is reversible per se. The trial court did not err.[2]

The state and federal Constitutions prohibit an advocate from using peremptory challenges to exclude jurors based on race. (*People v. Lenix* (2008) 44 Cal.4th 602, 612 (*Lenix*), citing *Batson v. Kentucky* (1986) 476 U.S. 79, 97 (*Batson*) and *Wheeler, supra,* 22 Cal.3d at pp. 276-277.) "The exclusion by peremptory challenge of a single juror on the basis of race or ethnicity is an error of constitutional magnitude requiring reversal." (*People v. Silva* (2001) 25 Cal.4th 345, 386.) Parties are presumed to make peremptory challenges on constitutionally permissible grounds. (*Wheeler, supra,* 22 Cal.3d at p.

---

**2** Because we hold that the trial court did not err in granting its own motion under *Wheeler, supra,* 22 Cal.3d 258, we need not decide whether error by the trial court would be subject to a harmless error analysis or would be reversible per se.

8

278.)  "[D]efense counsel, like prosecutors, are precluded from peremptorily excusing prospective jurors on racial, ethnic or gender grounds."  (*People v. Willis* (2002) 27 Cal.4th 811, 813.)  A trial court is "inherently empowered to initiate a *Wheeler* proceeding on its own motion when it perceive[s] that one of the litigants appear[s] to be challenging prospective jurors because of race."  (*People v. Lopez* (1991) 3 Cal.App.4th Supp. 11, 15.)

"The proper focus of a *Batson/Wheeler* inquiry, of course, is on the subjective *genuineness* of the race-neutral reasons given for the peremptory challenge, *not* on the objective *reasonableness* of those reasons.  [Citation.]"  (*People v. Reynoso* (2003) 31 Cal.4th 903, 924.)  "All that matters is that the [stated] reason for exercising the peremptory challenge is sincere and legitimate, legitimate in the sense of being nondiscriminatory.  '[A] "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal protection.  [Citations.].'  [Citation.]"  (*Ibid.*)  A party properly may use a peremptory challenge to excuse a prospective juror who has difficulty communicating in English (*People v. Sims* (1993) 5 Cal.4th 405, 429-430, abrogated on other grounds in *People v. Storm* (2002) 28 Cal.4th 1007, 1031-1032) or based on a prospective juror's employment  (*People v. Watson* (2008) 43 Cal.4th 652, 677).  "Review of a trial court's denial of a *Wheeler/Batson* motion is deferential, examining only whether substantial evidence supports its conclusions.  [Citation.]  . . . So long as the trial court makes a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal.  [Citation.]'  [Citation]."  (*Lenix, supra,* 44 Cal.4th at pp. 613-614.)

A trial court employs a well-defined procedure for resolving a *Wheeler/Batson* motion.  First, the trial court determines whether there was a prima facie showing that a party has exercised peremptory challenges based on race.  (*Lenix, supra,* 44 Cal.4th at p. 612.)  If a trial court asks a party to justify its peremptory challenges, the question of whether a prima facie showing has been made is considered moot or a finding of a prima facie showing is implicit in the trial court's request.  (*People v. Welch* (1999) 20 Cal.4th 701, 745-746.)  Second, once a prima facie case has been shown, the burden shifts to the

9

party making the peremptory challenges to show that the challenges were made for a race-neutral reason. (*Lenix, supra,* 44 Cal.4th at p. 612.) Third, the trial court determines whether there has been purposeful discrimination in the use of the peremptory challenges. (*Ibid.*) At this stage, "'the issue comes down to whether the trial court finds [defense counsel]'s race-neutral explanations to be credible. Credibility can be measured by, among other factors, [defense counsel]'s demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.' [Citation.]" (*Id.* at p. 613.) Credibility determinations "lie '"peculiarly within a trial judge's province,"'" and we defer to such determinations "'in the absence of exceptional circumstances.'" (*Id.* at p. 614.)

The trial court stated that defense counsel had excused all Asian prospective jurors from the panel and asked defense counsel to explain his peremptory challenges, particularly with respect to prospective juror No. 1. By its inquiry, the trial court implicitly found that there was a prima facie showing that defense counsel had used peremptory challenges to excuse prospective jurors based on race. (*People v. Welch, supra,* 20 Cal.4th at pp. 745-746.) In connection with whether the challenge of prospective juror No. 1 was for a race-neutral reason, defense counsel stated that he excused prospective juror No. 1 because she had a "language issue" and because she was a software engineer and thus not versed in the law. As to the language issue, defense counsel stated that prospective juror No. 1 had a thick or heavy accent. The trial court disagreed. It found that although prospective juror No. 1 spoke softly, she did not have a thick or heavy accent and answered questions articulately in full sentences. We cannot determine from the reporter's transcript whether prospective juror No. 1 had a thick or heavy accent. We can, however, determine from the transcript whether prospective juror No. 1, notwithstanding any such accent, understood and spoke English well. When requested by the trial court to repeat certain biographical information, prospective juror No. 1 responded, "Software engineer. Married. My husband is a digital illustrator. I have one adult son. He is in college. I did not have any prior jury experience." Prospective juror No. 1 also answered the trial court's other voir dire questions

10

appropriately. Prospective juror No. 1's voir dire responses demonstrated that she understood and spoke English well. Accordingly, substantial evidence supports the trial court's determination that prospective juror No. 1 did not have a "language issue" that would justify a peremptory challenge. (*Lenix, supra,* 44 Cal.4th at p. 613.)

Defense counsel did not explain well his claim that he excused prospective juror No. 1 based on her employment as a software engineer. He appears to have argued that as a software engineer, she was not familiar with "legal issues." The trial court rejected defense counsel's stated reason. It noted that defense counsel had not excused another engineer who, presumably, was not familiar with "legal issues," but had excused an administrative law judge who would have been familiar with legal issues. The trial court thus appears to have found not credible defense counsel's race-neutral "employment" reason for excusing the prospective juror—describing the reason as silly and laughable. As we stated above, absent exceptional circumstances, we defer to a trial court's credibility determinations. (*Lenix, supra,* 44 Cal.4th at p. 614.) Accordingly, the trial court had a sufficient basis to conclude that the use of the peremptory challenge to remove prospective juror No. 1 was based on purposeful discrimination. The trial court did not err in rejecting defense counsel's "employment" reasons for excusing prospective juror No. 1.

We have otherwise examined the entire record and are satisfied that defendant's attorney has fully complied with her responsibilities and that no other arguable issues exist. (*People v. Wende, supra,* 25 Cal.3d at p. 441.)

11

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

We concur:

TURNER, P. J.

KRIEGLER, J.

12