[No. S096349. Apr. 4, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD CHARLES WILLIS, Defendant and Appellant.

## COUNSEL

Tara M. Mulay, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Robert R. Anderson, Chief Assistant Attorneys General, Carol Wendelin Pollack, Pamela C. Hamanaka, Assistant Attorneys General, William T. Harter, Kenneth C. Byrne, Marc E. Turchin and April S. Rylaarsdam, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHIN, J.**—Under existing law, when either party in a criminal case succeeds in showing that the opposing party has improperly exercised peremptory challenges to exclude members of a cognizable group, the court must dismiss all the jurors thus far selected and quash the remaining venire. (*People v. Wheeler* (1978) 22 Cal.3d 258, 282 [148 Cal.Rptr. 890, 583 P.2d 748] (*Wheeler*); see *Batson v. Kentucky* (1986) 476 U.S. 79 [106 S.Ct. 1712, 90 L.Ed.2d 69] (*Batson*).) *Wheeler* reasoned that the remedy of dismissal was appropriate because "the complaining party is entitled to a random draw from an entire venire—not one that has been partially or totally stripped of members of a cognizable group by the improper use of peremptory challenges." (*Wheeler, supra,* 22 Cal.3d at p. 282.)

In the present case, defense counsel, representing a Black defendant, exhibited group bias in exercising his peremptory challenges to exclude White male prospective jurors, thereby violating the People's right to a representative and impartial jury. (See *United States v. Martinez-Salazar* (2000) 528 U.S. 304, 315 [120 S.Ct. 774, 781-782, 145 L.Ed.2d 792] [defense counsel, like prosecutors, are precluded from peremptorily excusing prospective jurors on racial, ethnic or gender grounds]; *Georgia v. McCollum* (1992) 505 U.S. 42, 49-50, 57, 59 [112 S.Ct. 2348, 2353-2354, 2357-2358,

2359, 120 L.Ed.2d 33]; *Wheeler, supra,* 22 Cal.3d at p. 282, fn. 29 ["the People no less than individual defendants are entitled to a trial by an impartial jury drawn from a representative cross-section of the community"].) Counsel, having first unsuccessfully moved to dismiss and replace the entire jury venire as underrepresentative of Blacks, evidently attempted to solve the problem by using his peremptory challenges to exclude White males from the jury, a clear violation of the People's right to an impartial jury. The trial court, after inquiring of counsel regarding his reasons for excluding these persons, found that he had exercised discriminatory peremptory challenges due to group bias against White males. With the People's assent, the court rejected defendant's motion to dismiss the remaining venire, imposed (and later vacated) monetary sanctions on defense counsel, and continued voir dire with the original venire. The jury eventually convicted defendant of cocaine possession.

On appeal, defendant argues that dismissal of the venire, an objective he had sought from the outset in this case, was the only available remedy for his own exercise of group bias. According to defendant, he was "not tried by a [*sic*] impartial jury within the meaning of the California Constitution, his trial was fundamentally unfair, and it constituted a quintessential 'miscarriage of justice,' requiring reversal of the judgment." As will appear, we disagree, concluding that the trial court, acting with the prosecutor's assent, had discretion to consider and impose remedies or sanctions short of outright dismissal of the entire jury venire. Accordingly, we will reverse the contrary judgment of the Court of Appeal and remand the cause to that court for disposition of defendant's remaining appellate issues.

## FACTS

The following uncontradicted facts were taken largely from the Court of Appeal's opinion in this case. Defendant, Edward Charles Willis, appeals from a judgment entered after his conviction by jury of possessing cocaine with seven prior strike convictions. (Health & Saf. Code, § 11350, subd. (a); Pen. Code, §§ 667, subds. (b)-(i); 1170.12.) Defendant received a 25-year-to-life sentence.

The details of defendant's offense, and the circumstances of his arrest and conviction for cocaine possession, are not pertinent to the issues presently before us. During jury selection, after the first group of 12 prospective jurors was seated, but before any further proceedings, defendant's trial counsel, Ken Rutherford, asked to approach the bench. Outside the jury's presence, defendant's counsel stated: "This panel is not a sample of the community for my client. . . . I would oppose this panel at this point as it not being

reflective of the community at large. [Defendant] needs a jury of his peers. . . ." Counsel continued, with the transcript stating: "[T]here appear to be no minorities from the first twelve called to the juror box. There don't appear to be any at all in the large jury panel. [¶] The Court: What minorities are you speaking about? [¶] Mr. Rutherford: In general, Black to be specific. There is one Black on the entire panel. There appear to be no eth[n]ic minorities in the twelve seated. There appear to be maybe one Hispanic or Asian descent in the large group, one Hispanic male in the large group. And I believe that would be a fair representation that the rest would be White individuals. [¶] The Court: Without a further showing of an improper jury ven[ire] selection, the motion is denied."

After defense counsel used 11 peremptory challenges, the prosecutor asked for a bench conference. Outside the jury's presence, the prosecutor made "a *Wheeler* motion based on the defense . . . kicking [off] male Whites." The prosecutor noted the defense had used seven of its 11 peremptory challenges against male Whites, "and has now left the jury completely female except for one male Black and one male White." "The Court: Mr. Rutherford. [¶] Mr. Rutherford: Is the court finding a prima facie case? [¶] The Court: You bet."

Defense counsel first unsuccessfully argued that White males were not a protected class under *Wheeler*. The court noted defendant also had excused a female Hispanic and a female Asian. The court stated, "It seems to me that you are systematically, for racial reasons alone, kicking off male Whites." Counsel denied doing so, and said he had racially neutral reasons for his peremptory challenges, including that the challenged jurors were crime victims and were related to police officers. After the court repeated it had made a prima facie finding of a *Wheeler* violation, defense counsel offered explanations for each challenged peremptory.

The court ultimately concluded "I find that there is a systematic exclusion of a protected class, male Whites. And [defense counsel] can't do that just as [the prosecutor] can't do that. [¶] So now what do you want me to do about it? [¶] [The prosecutor]: . . . [A]t this point obviously the remedy of excusing a panel would only . . . serve to his benefit because that is what he is seeking to do. At this point I would ask for the court to admonish him to not continue that kind of behavior. And if he does, sanction him if he does so. [¶] The Court: You are admonished not to violate *Wheeler* again. Should you do so, I will impose personal monetary sanctions under [section] 177.35 of the Code of Civil Procedure."

Defendant moved for a mistrial, asserting he should not be left with the remaining members of the original venire, and claiming that the process was depriving him of a fair trial. The court denied the motion, stating for the record its "suspicion" that counsel was committing *Wheeler* error in the hope the court would dismiss the venire, and admonishing counsel that such a tactic would be illegal, immoral and improper. Jury selection resumed. The court did not excuse the venire or reseat any of the improperly excused jurors.

Later, the prosecutor made a second *Wheeler* motion based on defendant's using eight of his next nine peremptories to strike White males. After demanding explanations, the court again found defendant had violated *Wheeler*. The court sanctioned defense counsel with $1,500 in monetary sanctions (which were stayed and, following trial, lifted). Defendant's renewed motion for mistrial was denied. Again, the court did not reseat any improperly challenged jurors or quash the venire and begin jury selection again with a new venire.

Defendant appealed the ultimate adverse judgment on a variety of grounds, including the court's failure to dismiss the remaining venire. On appeal, neither party challenges the trial court's ruling on the *Wheeler* motions or its findings that defendant twice violated *Wheeler*. Defendant's central argument is that the court had no discretion to impose sanctions or other remedies short of dismissing the entire venire and granting a mistrial. As previously noted, the Court of Appeal majority reversed and remanded for new trial, concluding that, under *Wheeler,* the trial court prejudicially erred in failing to quash the entire remaining venire.

## DISCUSSION

As we stated in *Wheeler,* "[i]f a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must raise the point in timely fashion and make a prima facie case of such discrimination to the satisfaction of the court. . . . [¶] . . . [¶] Upon presentation of this and similar evidence—in the absence, of course, of the jury—the court must determine whether a reasonable inference arises that peremptory challenges are being used on the ground of group bias alone. . . . [¶] If the court finds that a prima facie case has been made, the burden shifts to the other party to show if he can that the peremptory challenges in question were not predicated on group bias alone. . . . [¶] If the court finds that the burden of justification is not sustained as to any of the questioned peremptory challenges, the presumption of their validity is

rebutted. Accordingly, the court must then conclude that the jury as constituted fails to comply with the representative cross-section requirement, *and it must dismiss the jurors thus far selected. So too it must quash any remaining venire . . . . Upon such dismissal a different venire shall be drawn and the jury selection process may begin anew.*" (*Wheeler, supra,* 22 Cal.3d at pp. 280-282, italics added, fns. omitted; see *Batson, supra,* 476 U.S. at pp. 93-98 [106 S.Ct. at pp. 1721-1724]; *People v. Turner* (1994) 8 Cal.4th 137, 164-165 [32 Cal.Rptr.2d 762, 878 P.2d 521].)

■ The Court of Appeal majority in this case agreed with defendant that, under *Wheeler,* the trial court had no discretion other than to dismiss the entire venire once it concluded that defense counsel had exhibited group bias in exercising peremptory challenges. The appellate court readily acknowledged the anomaly in requiring dismissal as the sole remedy in this case, a remedy that essentially would reward the defense for its exercise of group bias. As the Court of Appeal stated, "Restarting jury selection with a new venire punishes the offending party by preventing it from trying its case to a jury wrongly selected by that party to be biased in its favor. However, the remedy also rewards the offending party by letting it try jury selection a second time and try and obtain a more sympathetic panel. This single remedy thus encourages both parties, if dissatisfied with the venire or the petit jury as it develops during the selection process, to violate the rule so they can try and mold a new panel more to their liking. In addition to encouraging rather than deterring *Wheeler/Batson* violations, the single remedy forces busy trial courts to prolong jury selection by beginning again, thus compounding court congestion and frustrating trial judges from efficiently managing their crowded calendars."

The Court of Appeal, after exploring possible alternative solutions but rejecting them as unauthorized by *Wheeler,* concluded that "[w]e think the facts of this case and the continuing struggles of trial and appellate courts to implement the *Wheeler* rules demonstrate the need for the Supreme Court to revisit its opinion." (See also *People v. Smith* (1993) 21 Cal.App.4th 342, 345-346 [25 Cal.Rptr.2d 850] [reluctantly reversing judgment for failure to dismiss remaining jury venire, stating that until this court "changes its mind, we have no option"]; *People v. Lopez* (1991) 3 Cal.App.4th Supp. 11, 17-18 [5 Cal.Rptr.2d 775] (*Lopez*) [noting need for some "flexible alternative remedy" other than outright dismissal].)

Justice Mallano in dissent argued that *Wheeler* does not compel reversal, given defendant's role in violating its commands, and "thereby creating the grounds upon which he requested that the jury be dismissed. Because defendant's wrongdoing was the cause of the error, if any, he is estopped from arguing that the trial court erred in not discharging the jury."

We accept the Court of Appeal majority's suggestion that we revisit *Wheeler.* We note that *Wheeler* itself left open the possibility of reconsidering its ruling that dismissal of the remaining jury venire was the sole remedy for an exercise of peremptory challenges based on group bias. As we stated in *Wheeler,* "Additional sanctions are proposed in the literature . . . , but we have no present grounds to believe that the above procedure will be ineffective to deter such abuses of the peremptory challenge. If experience should prove otherwise, it will be time enough then to consider alternative penalties." (*Wheeler, supra,* 22 Cal.3d at p. 282, fn. 29.)

We first observe that the *Wheeler* remedy of dismissal is not compelled by the federal Constitution, for the high court in *Batson* expressly left to the state courts "how best to implement our holding," including "whether it is more appropriate in a particular case, upon a finding of discrimination against black jurors, for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case [citation], or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire [citation]." (*Batson, supra,* 476 U.S. at p. 99, fn. 24 [106 S.Ct. at p. 1725].)

The present case vividly demonstrates the need for the availability of some discretionary remedy short of dismissal of the remaining jury venire. Here, defendant, through counsel, originally sought that very remedy as a ready means of curing a perceived imbalance in the initial jury venire. Failing to achieve that end through appropriate proof, the defense then engaged in a series of concededly improper and biased peremptory exclusions, aimed at indirectly accomplishing what it could not directly achieve, thereby violating the People's right to a representative and impartial jury. To remedy that improper course of conduct by dismissing the remaining venire not only would reward such conduct and encourage similar conduct in future cases, but also would frustrate the court's substantial and legitimate interest in the expeditious processing of cases for trial. (See *Morning v. Zapata Protein (USA), Inc.* (4th Cir. 1997) 128 F.3d 213, 215 [recognizing importance of timely ruling on and correcting *Batson* violations to avoid necessity of impaneling new jury]; *Koo v. McBride* (7th Cir. 1997) 124 F.3d 869, 873 [upholding remedy short of reinstating all improperly dismissed jurors or dismissing remaining venire]; *Mata v. Johnson* (5th Cir. 1996) 99 F.3d 1261, 1270-1271 [acknowledging *Batson* violation but refusing to grant new trial to defendant who participated in scheme to rid jury of Black jurors]; *McCrory v. Henderson* (2d Cir. 1996) 82 F.3d 1243, 1247 [stressing importance of timely *Batson* motions]; Alschuler, *The Supreme Court and the Jury:*

*Voir dire, Peremptory Challenges, and the Review of Jury Verdicts* (1989) 56 U. Chi. L.Rev. 153, 178-179 (Alschuler).)

*People v. Williams* (1994) 26 Cal.App.4th Supp. 1 [31 Cal.Rptr.2d 769] (*Williams*), illustrates the practical need for alternative remedies. There, the trial court disbelieved defense counsel's explanations for peremptorily excusing White prospective jurors and, finding a *Wheeler* violation, declared a mistrial and dismissed the remaining venire. After the case was reset for trial and a second venire was drawn up, defense counsel began to systematically exclude Asian prospective jurors, and again the court declared a mistrial and discharged the jury venire. (*Id.* at pp. Supp. 4-5.)

Prior to voir dire of the *third* panel, the court discussed with counsel possible methods for passing on *Wheeler* motions without the necessity of discharging the entire venire and declaring a third mistrial. (*Williams, supra,* 26 Cal.App.4th at p. Supp. 5.) Over defense objection, the court indicated that further peremptory challenges initially would be made at sidebar outside the jury's presence, so that any successful *Wheeler* objection could be ruled on, and any improperly challenged jurors retained, without revealing to them which party had attempted their removal. As the trial court stated, " 'I would simply not allow the peremptory, rather than declare a mistrial.' " (*Ibid.*)

The trial court in *Williams* recognized that the remedy it fashioned was one not " 'mentioned in any case that I have seen, but I haven't seen any case where there's been two *Wheeler* mistrials.' " (*Williams, supra,* 26 Cal.App.4th at p. Supp. 5.) The court observed that, lacking such an alternative remedy to yet another dismissal, " 'we could be in a position of never getting to trial . . . .' " (*Ibid.*) Thereafter, the court sustained the prosecutor's *Wheeler* objection to another peremptory challenge, and ordered the challenged juror reseated without declaring a third mistrial. (*Williams, supra,* 26 Cal.App.4th at p. Supp. 7.)

On appeal, the appellate department in *Williams* upheld the trial court's ruling, noting that the People, as the party raising the *Wheeler* objection, waived its right to a mistrial and dismissal of the venire by agreeing to the court's alternative remedy. The *Williams* court observed that "[i]mportantly, the trial court's procedure of conducting preliminary peremptory challenges and *Wheeler* motions at the sidebar prevented potential bias by the challenged juror against the party whose attempt to excuse the juror was unsuccessful." (*Williams, supra,* 26 Cal.App.4th at pp. Supp. 9-10.)

Other cases in addition to *Williams* have noted the need to develop alternative remedies to dismissal. *Lopez* noted that "not all jurisdictions have

followed the *Wheeler* remedy exclusively. The Supreme Court of Massachusetts has invested trial courts with the power to fashion alternative relief in such cases, should they choose to do so. (*Com.* v. *Reid* (1981) 384 Mass. 237, 255 [424 N.E.2d 495].) '[T]he judge has the authority to fashion relief without declaring a mistrial. In *Soares*, we suggested that where no blacks remained on the venire, dismissal was an appropriate remedy. We did not hold that dismissal of the entire venire was the only appropriate relief. Such a limitation on the trial judge's ability to respond in these circumstances would place in the hands of litigants the unchecked power to have a mistrial declared based on their own misconduct. It would be a reproach to the administration of justice were we to sanction such a result. [Citation.]' (*Reid, supra*, 384 Mass. at p. 255 [424 N.E.2d at p. 500].) The Massachusetts court criticized the adoption of a per se approach such as the one in *Wheeler* as too rigid, stating that the trial judge can cope with all the various situations as they arise. (*Ibid.*)

"The trial judge below employed a remedy for the *Wheeler* violation sanctioned in Massachusetts, but not in California. Much though we may admire the flexible alternative remedy fashioned by the Massachusetts courts, we feel bound by the mandatory language in *Wheeler*. Thus, we are obliged to reverse the judgment of conviction." (*Lopez, supra*, 3 Cal.App.4th at p. Supp. 18; accord, *People v. Rodriguez* (1996) 50 Cal.App.4th 1013, 1026 [58 Cal.Rptr.2d 108] [error in failing to strike remaining venire]; *People v. Smith, supra*, 21 Cal.App.4th at p. 346 [same]; see also Sleeper, *Maryland's Unfortunate Attempt to Define a Batson Remedy* (1998) 57 Md. L.Rev. 773, 779-780 (Sleeper) [noting the majority of states give trial courts discretion to "select the remedy that best fits the facts and circumstances of each case"].)

In the present case, the Court of Appeal majority, after discussing *Williams* and *Lopez*, among other decisions, explored at length possible alternatives to outright dismissal of the jury venire. The court suggested "[a]n alternative approach would give trial judges discretion to fashion additional remedies for *Wheeler/Batson* violations. One alternative would be to disallow the improper challenge(s) and seat the wrongfully excluded juror(s). This remedy fully vindicates all the rights supported by the principles, avoids the problems outlined [above], yet permits trial judges to employ the new-venire alternative when that remedy is more appropriate. Alternative forms of jury selection may be used to keep parties from being prejudiced by jurors returned to the panel after an improper challenge is disallowed. (Compare *People v. Harris* (1992) 10 Cal.App.4th 672 [12 Cal.Rptr.2d 758] [having all peremptory challenges in chambers violates defendant's right to a public trial] with *People v. Williams, supra*, 26 Cal.App.4th at pp. Supp.

7-8 [proper to make each challenge at sidebar to permit opponent to make a *Wheeler* motion, after which the use of and party making any peremptory was announced in open court].)

"A second potential alternative remedy, the one chosen here by the trial court at the prosecution's urging, would be imposing sanctions on the offending party. Here, the court later vacated the sanctions, thus making them meaningless and effectively providing no remedy at all for the violation. Moreover, unless combined with one or both of the remedies discussed above, this alternative completely fails to vindicate the juror's fundamental right not to be wrongly excluded from participation, and permits the case to be ·tried by an intentionally unrepresentative and biased jury. Thus, this remedy permits a wrongly selected jury to actually resolve the case, giving the appearance that the court system approves of this process, rather than having the system prevent such a result."

The court below concluded that "[h]owever, despite the merits or drawbacks of alternative remedies, to date our Supreme Court has unequivocally stated that no alternatives are available. Violations of the *Wheeler/Batson* rule must be remedied only by quashing the venire and beginning jury selection anew with a fresh venire. Thus, we are compelled to find the trial court erred in violating this mandate. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)"

We think the benefits of discretionary alternatives to mistrial and dismissal of the remaining jury venire outweigh any possible drawbacks. As the present case demonstrates, situations can arise in which the remedy of mistrial and dismissal of the venire accomplish nothing more than to reward improper voir dire challenges and postpone trial. Under such circumstances, and with the assent of the complaining party, the trial court should have the discretion to issue appropriate orders short of outright dismissal of the remaining jury, including assessment of sanctions against counsel whose challenges exhibit group bias and reseating any improperly discharged jurors if they are available to serve. In the event improperly challenged jurors have been discharged, some cases have suggested that the court might allow the innocent party additional peremptory challenges. (See *Koo v. McBride, supra*, 124 F.3d at p. 873; *McCrory v. Henderson, supra*, 82 F.3d at p. 1247.)

Additionally, to ensure against undue prejudice to the party unsuccessfully making the peremptory challenge, the courts may employ the *Williams* procedure of using sidebar conferences followed by appropriate disclosure in open court as to *successful* challenges. (See *Williams, supra*, 26 Cal.App.4th

at pp. Supp. 7-8, distinguishing *People v. Harris, supra,* 10 Cal.App.4th 672 [trial court violated defendant's public trial right by conducting all peremptory challenges at sidebar]; see also *Georgia v. McCollum, supra,* 505 U.S. at p. 53, fn. 8 [112 S.Ct. at p. 2356] [common practice not to reveal to jurors identity of challenging party]; *Jefferson v. State* (Fla. 1992) 595 So.2d 38, 40; Sleeper, *supra,* 57 Md. L.Rev. at pp. 789-790, and authorities cited; Alschuler, *supra,* 56 U. Chi. L.Rev. at pp. 178-179.)

We note that the American Bar Association has included as one of its Criminal Justice Trial by Jury Standards that "[a]ll challenges, whether for cause or peremptory, should be addressed to the court outside the presence of the jury, in a manner so that the jury panel is not aware of the nature of the challenge, the party making the challenge, or the basis of the court's ruling on the challenge." (ABA Stds. for Crim. Justice, Discovery and Trial by Jury (3d ed. 1996) std. 15-2.7, p. 167.) But requiring all challenges to be made at sidebar may be unduly burdensome. Trial courts should have discretion to develop appropriate procedures to avoid such burdens, such as limiting such conferences to situations in which the opposing party has voiced a *Wheeler* objection to a particular challenge. For example, to avoid prejudicing the party making unsuccessful challenges in open court, the court in its discretion might require counsel first privately to advise opposing counsel of an anticipated peremptory challenge. If no objection is raised, then the challenge could be openly approved. In that way, only objectionable challenges would be heard at sidebar.

Defendant insists, however, that *Wheeler* foreclosed any such experimentation or exercise of discretion in the present case. He first argues that the trial court's failure to dismiss the remaining jury venire violated *Wheeler* by denying him his rights to a fair trial and impartial jury "drawn from a representative cross-section of the community . . . ." (*Wheeler, supra,* 22 Cal.3d at p. 272.) Defendant asserts that his conviction must be reversed because the composition of the jury calls in question "[t]he integrity and the fairness of the proceedings." We disagree, for defendant, acting through his counsel, caused the unrepresentative jury of which he complains, and in doing so thereby violated the People's right to a representative and impartial jury. Under defendant's reasoning, a defendant could deliberately, and with group bias, deplete a jury of White jurors, convince the trial court to deny the prosecutor's *Wheeler* motion, and then, if convicted by the jury so selected, could appeal the resulting conviction on the ground he was tried by an improperly selected jury. The law cannot tolerate such an anomalous result. (See, e.g., *People v. Edwards* (1991) 54 Cal.3d 787, 812-813 [1 Cal.Rptr.2d 696, 819 P.2d 436].)

*Wheeler,* moreover, is distinguishable. Its rationale was that "the complaining party is entitled to a random draw from an entire venire—not one

that has been partially or totally stripped of members of a cognizable group . . . ." (*Wheeler, supra,* 22 Cal.3d at p. 282.) In our case, defendant was not the party "complaining" of group bias, but indeed was the very party who caused it. The complaining party was the prosecution, which waived its rights to a new venire in favor of sanctioning defense counsel and continuing the proceedings. As noted, the high court in *Batson* found no constitutional impediment to a remedy short of outright dismissal of the remaining venire (*Batson, supra,* 476 U.S. at p. 99, fn. 24 [106 S.Ct. at p. 1725]), and our *Wheeler* decision left open the question of possible alternative remedies (*Wheeler, supra,* 22 Cal.3d at p. 282, fn. 29). The law was unclear as to whether outright dismissal of the jury venire was mandated where the improper group bias was exhibited by the same party seeking dismissal. *Wheeler* did not involve such a situation, and the trial court's refusal to dismiss the entire remaining venire under similar circumstances was supported by at least one appellate decision (*Williams, supra,* 26 Cal.App.4th at pp. Supp. 8-10).

Defendant argues that any remedy short of outright dismissal of the remaining venire would fail to vindicate the rights of improperly discharged jurors to participate in the jury process without unfair reflections on their fitness and impartiality. (See *Batson, supra,* 476 U.S. at p. 87 [106 S.Ct. at p. 1718]; *Georgia v. McCollum, supra,* 505 U.S. at pp. 49-50 [112 S.Ct. at pp. 2353-2354]; *People v. Turner* (1986) 42 Cal.3d 711, 716-717 [230 Cal.Rptr. 656, 726 P.2d 102].) We disagree. Although the foregoing cases may protect the rights of persons of all races to serve as jurors, they do not assure any particular juror the right to be seated, or reseated, on a particular jury. Moreover, to the extent the court has retained control over improperly discharged jurors and can reseat them, their rights are indeed vindicated. And if some improperly dismissed jurors are no longer available to serve, dismissing the remaining jurors and calling a mistrial does little to vindicate the rights of those excluded. (See *Jefferson v. State, supra,* 595 So.2d at p. 40 [remedy of striking the venire and convening a new one "does nothing to remedy the recognized discrimination against those improperly removed from the jury"].) On balance, it seems more appropriate, and consistent with the ends of justice, to permit the complaining party to waive the usual remedy of outright dismissal of the remaining venire.

We stress that such waiver or consent is a prerequisite to the use of such alternative remedies or sanctions, for *Wheeler* made clear that "the complaining party is entitled to a random draw from an entire venire" and that dismissal of the remaining venire is the appropriate remedy for a violation of that right. (*Wheeler, supra,* 22 Cal.3d at p. 282.) Thus, trial courts lack discretion to impose alternative procedures in the absence of consent or

waiver by the complaining party. On the other hand, if the complaining party does effectively waive its right to mistrial, preferring to take its chances with the remaining venire, ordinarily the court should honor that waiver rather than dismiss the venire and subject the parties to additional delay.

For like reasons, we reject defendant's claim that failure to dismiss the entire venire and declare a mistrial would erode public confidence in the courts. (See *Batson, supra,* 476 U.S. at p. 99 [106 S.Ct. at pp. 1724-1725]; *Georgia v. McCollum, supra,* 505 U.S. at pp. 49-50 [112 S.Ct. at pp. 2353-2354]; *People v. Tapia* (1994) 25 Cal.App.4th 984, 1028-1029 [30 Cal.Rptr.2d 851].) In terms of eroding public confidence, we think that allowing a defendant to manipulate the justice system, repeatedly exercising group bias to obtain a new jury venire and delay the proceedings against him, would cause far more damage. (See *Mata v. Johnson, supra,* 99 F.3d at pp. 1270-1271; Sleeper, *supra,* 57 Md. L.Rev. at p. 793 & fn. 169; Alschuler, *supra,* 56 U. Chi. L.Rev. at p. 178.)

In sum, the trial court did not err in rejecting defendant's motion to dismiss the remaining jury venire in favor of monetary sanctions. One aspect of the trial court's decision, however, is troubling. As observed by the Court of Appeal majority, "[h]ere, the court later vacated the sanctions, thus making them meaningless and effectively providing no remedy at all for the violation." Although the trial court may have had good reasons for ultimately deciding not to impose sanctions (the record is silent), in future cases courts should consider framing a more effective form of relief for *Wheeler* errors, including reseating improperly challenged jurors and imposing sanctions severe enough to guard against a repetition of the improper conduct. We conclude, however, that in light of defendant's own exercise of group bias, and the People's assent to the remedies chosen, the court did not err in failing to act more effectively in this case.

Having concluded the trial court did not err in refusing to dismiss the remaining jury venire at defendant's urging, we find it unnecessary to reach the Attorney General's alternative argument (supported by Justice Mallano's dissenting position in the court below), that defendant, who exercised the improper challenges at issue, should not be heard to complain about the resulting composition of the jury and should be deemed to have invited any error in allowing that jury to try his case. Additionally, because the Court of Appeal had no occasion to reach defendant's remaining appellate contentions, we will remand the cause to that court for further proceedings to resolve the appeal.

The judgment of the Court of Appeal is reversed and the cause remanded to that court for disposition of defendant's remaining appellate issues.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Brown, J., and Moreno, J., concurred.