WERDEGAR, J., Concurring.
Addressing the reprehensible practice of a party in a criminal case exercising a peremptory challenge to disqualify a *191 citizen from jury service simply because of the individual’s race, the United States Supreme Court in 1986 outlawed the practice as violative of the Fourteenth Amendment’s ban on racial discrimination. (Batson v. Kentucky (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712] (Batson).) The high court later extended the sweep of the Batson rule, prohibiting the removal of a prospective juror due to the juror’s gender (J. E. B. v. Alabama ex rel. T. B. (1994) 511 U.S. 127 [128 L.Ed.2d 89, 114 S.Ct. 1419]) or ethnic origin (Hernandez v. New York (1991) 500 U.S. 352 [114 L.Ed.2d 395, 111 S.Ct. 1859]), and applying Batson's holding to civil trials as well (Edmonson v. Leesville Concrete Co. (1991) 500 U.S. 614, 630-631 [114 L.Ed.2d 660, 111 S.Ct. 2077]).
California paved the road to Batson and its progeny eight years earlier in this court’s seminal Wheeler decision. (People v. Wheeler (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748] (Wheeler).) Relying in that case on article I, section 16 of the California Constitution, which guarantees the right to a jury trial and, by extension, an impartial jury drawn from a representative cross-section of the community (Wheeler, at pp. 265-266, 287), this court held for the first time that the exercise of a peremptory challenge to remove a prospective juror based on the juror’s race was unconstitutional. Speaking to the cross-section requirement, Wheeler explained that “in our heterogeneous society jurors will inevitably belong to diverse and often overlapping groups defined by race, religion, ethnic or national origin, sex, age, education, occupation, economic condition, place of residence, and political affiliation; that it is unrealistic to expect jurors to be devoid of opinions, preconceptions, or even deep-rooted biases derived from their life experiences in such groups; and hence that the only practical way to achieve an overall impartiality is to encourage the representation of a variety of such groups on the jury so that the respective biases of their members, to the extent they are antagonistic, will tend to cancel each other out.” (Id. at pp. 266-267.)
We further explained in Wheeler that “when a party presumes that certain jurors are biased merely because they are members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds—we may call this ‘group bias’—and peremptorily strikes all such persons for that reason alone, he not only upsets the demographic balance of the venire but frustrates the primary purpose of the representative cross-section requirement. That purpose ... is to achieve an overall impartiality by allowing the interaction of the diverse beliefs and values the jurors bring from their group experiences.” (Wheeler, supra, 22 Cal.3d at p. 276.) Later cases clarified that “the unconstitutional exclusion of even a single juror on improper grounds of racial or group bias requires the commencement of jury selection anew, or reversal of the judgment where such error is established on appeal.” (People v. *192 Reynoso (2003) 31 Cal.4th 903, 927, fn. 8 [3 Cal.Rptr.3d 769, 74 P.3d 852]; see People v. Fuentes (1991) 54 Cal.3d 707, 716, fn. 4 [286 Cal.Rptr. 792, 818 P.2d 75].)
Unlike the high court in Batson, which declined to address the issue of the appropriate remedy for a violation,[1] our Wheeler decision settled the issue for our state courts. After much discussion, the Wheeler court held that the trial court, after finding a cross-section violation occasioned by the discriminatory use of a peremptory challenge, “must dismiss the jurors thus far selected. So too it must quash any remaining venire, since the complaining party is entitled to a random draw from an entire venire—not one that has been partially or totally stripped of members of a cognizable group by the improper use of peremptory challenges. Upon such dismissal a different venire shall be drawn and the jury selection process may begin anew.” (Wheeler, supra, 22 Cal.3d at p. 282.) As the majority acknowledges, Wheeler’s sanction is still the default remedy (maj. opn., ante, at p. 188) and was the only sanction for more than 20 years.
Then, in 2002, we recognized “the need for the availability of some discretionary remedy [for a Wheeler/Batson violation] short of dismissal of the remaining jury venire.” (People v. Willis (2002) 27 Cal.4th 811, 818 [118 Cal.Rptr.2d 301, 43 P.3d 130] (Willis).) Although the vast majority of Wheeler/Batson claims we see on appeal involve a criminal defendant complaining about a prosecutor’s exercise of peremptory challenges, Willis presented the unusual situation in which a defense counsel was found to be striking White males from the jury in hopes of provoking a mistrial and obtaining a fresh venire. We recognized in Willis that Wheeler’s “remedy of mistrial and dismissal of the venire [would] accomplish nothing more than to reward [the defendant’s] improper voir dire challenges and postpone trial. Under such circumstances, and with the assent of the complaining party, the trial court should have the discretion to issue appropriate orders short of outright dismissal of the remaining jury, including assessment of sanctions against counsel whose challenges exhibit group bias and reseating any improperly discharged jurors if they are available to serve.” (Willis, at p. 821.)
Although Willis recognized some flexibility in choosing the remedy for a Wheeler violation, we stressed that a party’s “waiver or consent is a *193 prerequisite to the use of such alternative remedies or sanctions, for Wheeler made clear that ‘the complaining party is entitled to a random draw from an entire venire’ and that dismissal of the remaining venire is the appropriate remedy for a violation of that right. (Wheeler, supra, 22 Cal.3d at p. 282.) Thus, trial courts lack discretion to impose alternative procedures in the absence of consent or waiver by the complaining party. On the other hand, if the complaining party does effectively waive its right to mistrial, preferring to take its chances with the remaining venire, ordinarily the court should honor that waiver rather than dismiss the venire and subject the parties to additional delay.” (Willis, supra, 27 Cal.4th at pp. 823-824.)
As Willis recognized, the choice of an appropriate remedy is a tactical one belonging to the aggrieved party.[2] Depending on how jury selection has proceeded, counsel may wish to opt for Wheeler’s default remedy (quash the venire and begin jury selection anew), to have the offending party admonished but then continue with jury selection without reseating.the challenged juror (the remedy in Willis),[3] or simply to continue jury selection after the challenged prospective juror is reseated (the remedy in the instant case). Because of the strategic nature of the decision, for the trial court to impose one remedy or another absent counsel’s waiver or consent would be improper. (Willis, supra, 27 Cal.4th at p. 823 [“We stress that such waiver or consent is a prerequisite to the use of such alternative remedies or sanctions . . . .”].)
“Waiver,” of course, suggests an express relinquishment or abandonment of a known right or privilege. (In re Sheena K. (2007) 40 Cal.4th 875, 880, fn. 1 [55 Cal.Rptr.3d 716, 153 P.3d 282]; In re S.B. (2004) 32 Cal.4th 1287, 1293, fn. 2 [13 Cal.Rptr.3d 786, 90 P.3d 746].) “[T]he terms ‘waiver’ and ‘forfeiture’ have long been used interchangeably. The United States Supreme Court recently observed, however: ‘Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the “intentional relinquishment or abandonment of a known right.” [Citations.]’ (United States v. Olano [(1993) 507 U.S. 725, 733 [123 L.Ed.2d 508, 113 S.Ct. 1770]].)” (People v. Saunders (1993) 5 Cal.4th 580, 590, fn. 6 [20 Cal.Rptr.2d 638, 853 P.2d 1093], quoted with approval in People v. McKinnon (2011) 52 Cal.4th 610, 636, fn. 16 [130 Cal.Rptr.3d 590, 259 P.3d 1186].)
No such express relinquishment of a known right appears on the record in this case. The majority recognizes as much, for it holds that defendant *194 “impliedly consent[ed]” to the alternative remedy of reseating the challenged juror in lieu of quashing the venire (maj. opn., ante, at p. 186, italics added), because he “fail[ed] to object to the trial court’s proposed alternative remedy when the opportunity to do so [arose]” (ibid.). But defendant’s asserted implied consent sounds less like a waiver than a standard forfeiture of an issue by failing to object at trial. Search as one might, no evidence appears that counsel expressly relinquished a known right or privilege.
Although the majority cites three authorities in support of its implied waiver rationale, none supports its holding because each involved facts strongly suggesting that either defendant or defense counsel made a knowing choice. In Barsamyan v. Appellate Division of Superior Court (2008) 44 Cal.4th 960, 969-970 [81 Cal.Rptr.3d 265, 189 P.3d 271], counsel represented two unrelated defendants and affirmatively agreed that one defendant could be sent out for trial, necessarily agreeing (albeit tacitly) to waive the speedy trial rights of the second defendant, as counsel could not represent both simultaneously in different trials. In People v. Gutierrez (2003) 29 Cal.4th 1196, 1206 [130 Cal.Rptr.2d 917, 63 P.3d 1000], the court held the defendant waived his right to be present at trial by his affirmative refusal to exit his cell. In People v. Toro (1989) 47 Cal.3d 966 [254 Cal.Rptr. 811, 766 P.2d 577], the defendant contended the trial court violated his rights when it instructed the jury on lesser related crimes. The record in that case showed the trial court conferred with defense counsel, listed the instructions it intended to give (which included instructions on lesser related offenses), and told counsel it intended to give instructions on the list “ ‘absent any objection.’ ” (Id. at p. 977.) Despite such prompting, defense counsel remained silent. Needless to say, no such prompting occurred here.
By too easily finding that counsel made a tacit choice of remedy here, the majority runs a real risk of diluting the power of the historic Wheeler/Batson rule. Indeed, one can trace the journey of the jurisprudence in this state from (1) Wheeler, supra, 22 Cal.3d 258, where the sole remedy was quashing the venire, to (2) Willis, supra, 27 Cal.4th 811, where this court—on unusual • facts—permitted a lesser remedy in the trial court’s discretion if counsel waived the Wheeler remedy, to (3) this case, where despite averring that Wheeler provides the “default remedy,” the majority finds counsel impliedly waived the Wheeler remedy by his “passive concession” (maj. opn., ante, at p. 186). The rule in this case seems essentially equivalent to one in which the wronged party gets Willis’s alternative remedy for a Wheeler violation unless he or she objects. Indeed, two members of this court would apparently go further, finding a “strong argument” supporting the notion that a trial court could choose not to quash the venire even if a defendant elected that option as his or her chosen remedy for a Wheeler violation. (Conc. opn. of Baxter, J., ante, at p. 189, joined by Cantil-Sakauye, C. J.) Will the next case in this line find this court adopting a rule that the trial court itself can, in its *195 discretion and over counsel’s objection, select the remedy for a successful Wheeler/Batson motion? And the next case perhaps abolish the Wheeler remedy entirely as unnecessary? I am reluctant to join in the erosion of one of the important milestones in this court’s jurisprudence.
That the remedy provided by Wheeler (and applicable to Batson motions as well) may prove disadvantageous to the offending party, and inconvenient to the trial court, is true, but we have no evidence before us that Wheeler’s default remedy has proven impractical or unfair. The seriousness of quashing the venire and restarting jury selection from a new panel no doubt provides an incentive to parties not to approach, let alone transgress, the racial, gender, or ethnic origin line when selecting jurors, for fear of having to start jury selection from scratch. So viewed, the Wheeler remedy of quashing the venire serves an important function aside from making the wronged party whole; it exerts a kind of gravitational pull on the parties, making them identify and confront their otherwise invisible biases and influencing them to avoid allowing such improper considerations to affect their judgment when selecting a jury. By providing an incentive to refrain from relying on group bias during jury selection, the Wheeler remedy thus serves to vindicate the other purposes of the representative cross-section rule aside from ensuring juror impartiality: “[T]he representative cross-section rule also serves other essential functions in our society, such as legitimating the judgments of the courts, promoting citizen participation in government, and preventing further stigmatizing of minority groups.” (Wheeler, supra, 22 Cal.3d at p. 267, fn. 6.)
I joined the Willis majority, and I continue to agree that, on the unusual facts in that case, the court was correct to permit an alternative remedy for the Wheeler violation. No such unusual facts are present in this case, however, nor do I join the majority’s unwarranted extension of Willis. I would instead hold that imposition of a remedy other than that provided in Wheeler may be imposed only upon an express and knowing waiver by counsel on the record.
Conclusion
Although I conclude the trial court, after sustaining defendant’s Wheeler motion, was wrong to continue with jury selection in the absence of counsel’s express consent to forgo the default remedy of quashing the venire, this is not a case in which the trial court failed to give any remedy at all for the violation; in such a case, reversal would be required. Instead, because the question of the appropriate remedy for a Wheeler violation is one of state law only (Batson, supra, 476 U.S. at pp. 99-100, fn. 24), and the trial court both sustained defendant’s Wheeler motion and afforded him a remedy for the error, we apply the standard of review set forth in article VI, section 13 of the *196 California Constitution: “No judgment shall be set aside, or new trial granted, in any cause, ... for any error as to any matter of procedure, unless, after an examination of the entire cause, . ’ . the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.” As we can but assume the jurors eventually selected were fair and impartial, no reasonable probability exists that defendant Francis Mata would have achieved a more favorable result in his trial had the trial court quashed the venire and begun jury selection anew. (People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Accordingly, while I do not agree with the majority’s analysis, I concur in its conclusion to reverse the decision of the Court of Appeal.
Kennard, J., concurred.

 On the subject of the appropriate remedy for a violation, the Batson court “expressed] no view on whether it is more appropriate in a particular case, upon a finding of discrimination against black jurors, for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case, [citation], or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire, [citation].” (Batson, supra, 476 U.S. at p. 100, fn. 24.)

 I concur in the majority’s holding that counsel can choose the appropriate remedy for a Wheeler violation and that a personal waiver from defendant is unnecessary. (Maj. opn., ante, at p. 185.)

 In Willis, following the trial court’s decision to sustain the prosecutor’s Wheeler motion, “0]ury selection resumed” but “[t]he court did not excuse the venire or reseat any of the improperly excused jurors.” (Willis, supra, 27 Cal.4th at p. 816.)