Filed 7/8/13

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S201413 |
| v. | ) | |
| | ) | Ct.App. 2/1 B226256 |
| FRANCIS MATA, | ) | |
| | ) | Los Angeles County |
| Defendant and Appellant. | ) | Super. Ct. No. BA366071 |
| _____ | ) | |

In *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*), this court held that, if a jury "has been partially or totally stripped of members of a cognizable group by the improper use of peremptory challenges," the trial court "must dismiss the jurors thus far selected" and "quash any remaining venire." (*Id.* at 282.) However, in *People v. Willis* (2001) 27 Cal.4th 811 (*Willis*), we decided that trial courts are not limited to dismissing the entire venire as the only remedy in the case of a *Wheeler* violation: "Under such circumstances, *and with the assent of the complaining party*, the trial court should have the discretion to issue appropriate orders short of outright dismissal of the remaining jury, including . . . reseating any improperly discharged jurors if they are available to serve." (*Willis, supra,* 27 Cal.4th at p. 821, italics added .)

Here we consider whether implied consent can constitute the "assent of the complaining party" (*Willis, supra,* 27 Cal.4th at p. 821), in the context of a trial court's order to reseat an improperly discharged prospective juror after the court had granted the complaining party's *Wheeler* motion. We conclude that assent can

1

be found on the basis of implied consent and that, in this case, defendant did impliedly consent to the alternative remedy of reseating the improperly discharged juror. Accordingly, we reverse the judgment of the Court of Appeal, which held otherwise.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 21, 2009, Los Angeles police officers saw defendant and Earl Early stop next to Anthony Coleman. Coleman spit a plastic-wrapped item into his own hand, removed a small white object from the plastic, gave that object to Early, and took cash from Early. When defendant was detained, he was holding a rock of cocaine base. At the jail, defendant attacked the two officers as they were trying to escort him to a holding tank.

A jury convicted defendant of possession of cocaine (Health & Saf. Code, § 11350, subd. (a)), and two misdemeanor counts of resisting a peace officer (Pen. Code, § 148, subd. (a)(1)). The trial court sentenced defendant to two years in state prison. Defendant appealed, contending the trial court committed reversible error when, after finding that the prosecution improperly used a peremptory challenge to discharge a prospective African-American juror under *Wheeler*, *supra*, 22 Cal.3d 258, it reseated the juror instead of discharging the entire jury venire. The Court of Appeal reversed defendant's conviction, finding that defendant did not "expressly or implicitly consent[]" to the court's remedy of reseating of the improperly discharged juror. We granted the People's petition for review.

## II. DISCUSSION

In 1978, our opinion in *Wheeler* acknowledged that "the peremptory challenge is not a constitutional necessity but a statutory privilege." (*Wheeler*, *supra*, 22 Cal.3d at p. 281, fn. 28.) We concluded that "when a party presumes that certain jurors are biased merely because they are members of an identifiable

2

group distinguished on racial, religious, ethnic, or similar grounds . . . and peremptorily strikes all such persons for that reason alone, he not only upsets the demographic balance of the venire but frustrates the primary purpose of the representative cross-section requirement" (*Wheeler*, *supra*, 22 Cal.3d at p. 276), which we noted is a fundamental component of the "right to an impartial jury" (*id.* at p. 270).  We held that, in our state, "the right to trial by a jury drawn from a representative cross-section of the community is guaranteed equally and independently by the Sixth Amendment of the federal Constitution and by article I, section 16, of the California Constitution." (*Wheeler*, *supra*, 22 Cal.3d at p. 272.)  We also held that, if a jury "has been partially or totally stripped of members of a cognizable group by the improper use of peremptory challenges," the trial court "must dismiss the jurors thus far selected" and "quash any remaining venire." (*Id.* at 282.)

Eight years after our holding in *Wheeler*, the United States Supreme Court held that "the State's privilege to strike individual jurors through peremptory challenges[] is subject to the commands of the Equal Protection Clause." (*Batson v. Kentucky* (1986) 476 U.S. 79, 89.)  In *Batson*, the court set forth the procedures that should be followed once a defendant alleges purposeful discrimination in the selection of the venire. (*Batson*, *supra*, 476 U.S. 94-99.)  As did *Wheeler*, *Batson* noted that the federal Constitution does not guarantee a right to peremptory challenges, and the *Batson* court declined to formulate particular procedures to be followed after a successful objection to a peremptory challenge. (*Batson*, *supra*, 476 U.S. at p. 99.)  The United States Supreme Court specifically noted that, "[i]n light of the variety of jury selection practices followed in our state and federal courts, we make no attempt to instruct these courts how best to implement our holding today.  For the same reason, we express no view on whether it is more appropriate . . . for the trial court to discharge the venire and select a new jury

3

from a panel not previously associated with the case [citation] or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire . . . ." (*Batson*, *supra*, 476 U.S. at p. 99, fn. 24.)

In *Willis*, *supra*, 27 Cal.4th 811, we reconsidered what procedures our trial courts should follow after a successful *Wheeler* objection to a party's peremptory challenge. We noted "the need for the availability of some discretionary remedy short of dismissal of the remaining jury venire" and that the federal Constitution does not compel the remedy prescribed by *Wheeler*. (*Willis*, *supra*, 27 Cal.4th at p. 818.) We then concluded that "the benefits of discretionary alternatives to mistrial and dismissal of the remaining jury venire outweigh any possible drawbacks . . . [and that] situations can arise in which the remedy of mistrial and dismissal of the venire accomplish nothing more than to reward improper voir dire challenges and postpone trial. Under such circumstances, and with the assent of the complaining party, the trial court should have the discretion to issue appropriate orders short of outright dismissal of the remaining jury [venire], including assessment of sanctions against counsel whose challenges exhibit group bias and reseating any improperly discharged jurors if they are available to serve." (*Id.* at p. 821.) In *Willis*, we noted that "waiver or consent is a prerequisite to the use of such alternative remedies or sanctions, for *Wheeler* made clear that 'the complaining party is entitled to a random draw from an entire venire' and that dismissal of the remaining venire is the appropriate remedy for a violation of that right. [Citation.] Thus, trial courts lack discretion to impose alternative procedures in the absence of consent or waiver by the complaining party. On the other hand, if the complaining party does effectively waive its right to mistrial, preferring to take its chances with the remaining venire, ordinarily the court should honor that waiver rather than dismiss the venire and subject the parties to additional delay." (*Willis*, *supra*, 27 Cal.4th at pp. 823–824.)

4

In *Willis*, defense counsel unsuccessfully moved to dismiss the venire as under-representative of African-Americans, then used seven of 11 peremptory challenges to remove White males from the jury. After the prosecutor made a *Wheeler* motion, the trial court found systematic exclusion of a protected class, and asked the prosecutor, "[W]hat do you want me to do?" Noting that excusing the panel would give the defendant what he sought, the prosecutor instead asked the court to admonish defense counsel and to sanction him if the misconduct continued. (*Willis*, *supra*, 27 Cal.4th at pp. 814–815.) Defendant moved for a mistrial, contending the court should quash the entire venire. In denying the motion, the court voiced its "suspicion" that the defense was committing *Wheeler* error in the hope that the court would dismiss the venire. The court did not excuse the venire or reseat any improperly excused jurors, and jury selection resumed. The prosecutor made a second *Wheeler* motion based on the defendant's use of eight of his next nine peremptory challenges to strike White males, and the court ultimately found that the defendant had violated *Wheeler* again, and it imposed $1,500 in monetary sanctions on defense counsel. Defendant's renewed motion for mistrial was denied, and the court did not reseat any improperly challenged jurors or quash the venire. (*Willis*, *supra*, 27 Cal.4th at p. 816.)

In rejecting Willis's claim on appeal that the trial court erred by not dismissing the venire, we held that if the complaining party succeeds in showing that opposing counsel has improperly exercised peremptory challenges to exclude members of a cognizable group, "the trial court, acting with the [injured party]'s assent, [has] discretion to consider and impose remedies or sanctions short of outright dismissal of the entire jury venire." (*Willis*, *supra*, 27 Cal.4th at p. 814.)

In *People v. Overby* (2004) 124 Cal.App.4th 1237 (*Overby*), the first time the prosecutor exercised a peremptory challenge against an African-American juror, counsel for Overby asked the trial court to order the juror to remain in the

5

courtroom, and then made her *Wheeler* motion.  The court granted the motion and said, " 'I'm going to elect the remedy to reseat Number 9 rather than the remedy to kick the entire panel.' " (*Overby*, *supra*, 124 Cal.App.4th at p. 1243.)  Asked if they wished to be heard "as to the court's decision," both defense counsel said, "Submit," and the prosecutor objected.  The challenged juror was reseated and voir dire resumed.  The prosecutor later made an unsuccessful *Wheeler* motion and then sought reconsideration of the rulings on the defense and prosecution motions and requested that the court dismiss the venire.  "At no time during the reconsideration arguments did Overby's counsel state that she agreed that the venire should be dismissed, nor did she indicate any dissatisfaction with the remedy chosen by the court." (*Ibid.*)

The Court of Appeal in *Overby* held the consent required by *Willis* could be given by counsel, rather than defendant himself.  (*Overby*, *supra*, 124 Cal.App.4th at p. 1243.)  It then concluded defense counsel implicitly had consented to the trial court's remedy.  *Overby* relied on the fact that defense counsel had asked the court to prevent the challenged juror from leaving, had responded "Submit" when offered the opportunity to comment on the court's chosen remedy, and had failed to "alter her position or indicate dissatisfaction with the reseating remedy even after having time and opportunity to consider it further" when the prosecutor sought reconsideration of the *Wheeler* rulings.  (*Overby*, *supra*, 124 Cal.App.4th at pp. 1244-1245.)  *Overby* noted that our court "did not specify in *Willis* what constitutes consent to an alternate remedy or an effective waiver of the right to a mistrial" within the "assent" standard articulated in that case.  (*Overby*, *supra*, 124 Cal.App.4th at p. 1242.)

We now have occasion to address that issue.  The People interpret *Willis* as providing alternative remedies at the discretion of the trial court to further the court's interest in efficiently processing cases for trial.  They argue that, except

6

when fundamental constitutional rights are implicated, the complaining party's consent should be implied when that party fails to object and continues to participate in a potentially objectionable proceeding. In response, defendant contends quashing the venire is the "default remedy" following a successful *Wheeler* motion, unless the complaining party "waives that right and consents to an alternative remedy." He interprets our use of the words "waiver" and "consent" in *Willis* as requiring that "the complaining party [have] *knowledge* of the right being relinquished or abandoned, and that the complaining party *intentionally* relinquish[] or abandon[] that right." Defendant concedes that defense counsel can waive the right to quash the venire and consent to an alternative remedy, but he contends "counsel's mere silence cannot constitute a waiver and that, on this record, there is an insufficient basis to conclude that defense counsel impliedly waived [defendant's] right to quash the venire." For the reasons stated below, we find the People's position more persuasive.

*Willis* approved the trial court's consideration of discretionary alternatives to mistrial and dismissal of the remaining jury venire. Its recognition that the trial court may proceed with such alternative orders only with the assent of the complaining party safeguards the injured party's interest in an appropriate remedy to the improper discharge of a potential juror based on group bias.

We agree with the court in *Overby* that the assent required by *Willis* can be given by defense counsel. The *Overby* court explained that, "[a]s a general rule, counsel 'has the general authority to control the procedural aspects of the litigation and, indeed, to bind the clients in these matters.' (*In re Horton* (1991) 54 Cal.3d 82, 94.)" (*Overby*, *supra*, 124 Cal.App.4th at p. 1243.) "The right to request a mistrial or to elect to continue with a particular jury is not one of the constitutional rights deemed to be so personal and fundamental that it may only be personally waived by the defendant. [Citations.]" (*Ibid*.) Accordingly, counsel here could

7

assent in the trial court's proposed remedy and thereby waive defendant's right to a mistrial and a new jury venire. (*In re Horton*, *supra*, 54 Cal.3d at p. 95 [as to "fundamental rights of a less personal nature, courts may assume that counsel's waiver reflects the defendant's consent in the absence of an express conflict"].)

Additionally, we find that by failing to object to the trial court's proposed alternative remedy *when the opportunity to do so arises*, the complaining party impliedly waives the right to the default remedy of quashing the entire venire and impliedly consents to the court's proposed alternative remedy. "Assent," the term we used in *Willis*, encompasses positive agreement as well as passive concession. Our discussion of implied consent in *People v. Toro* (1989) 47 Cal.3d 966 (*Toro*), also supports this conclusion. In *Toro*, we held that consent to instructions on an uncharged lesser related offense could be inferred from defense counsel's failure to object, and that such failure to object "bar[s] a contention based on lack of notice." (*Id.* at p. 977; see also, e.g., *Barsamyan v. Appellate Division of Superior Court* (2008) 44 Cal.4th 960, 969-970 [waiver of statutory speedy trial rights may be inferred from silence]; *People v. Gutierrez* (2003) 29 Cal.4th 1196, 1206 [through his or her conduct, a defendant may impliedly waive the right to be present at trial].) In support of our holding in *Toro*, we observed that "[l]esser related offense instructions generally are beneficial to defendants and in a given case only the defendant knows whether his substantial rights will be prejudicially affected by submitting a lesser related offense to the jury." (*Toro*, *supra*, 47 Cal.3d at p. 977.)

The same is true here. Only the complaining party can assess in a particular case whether the proposed alternative remedy, such as the reseating of an improperly discharged juror, is more or less beneficial than the default remedy of quashing the entire jury venire. For the same reasons expressed in *Toro*, we conclude that the complaining party's assent to the trial court's proposed

8

alternative remedy may be found based on the failure to object, unless the trial court's actions effectively preclude a meaningful opportunity to object. In turn, we conclude that, by impliedly consenting to the alternative remedy, the complaining party waives the right to the default remedy of quashing the jury venire.

In order to decide whether defense counsel assented to the court's remedy of reseating the improperly discharged juror here, we review in detail the proceedings that both preceded and followed the court's granting of defendant's *Batson-Wheeler* motion with regard to Prospective Juror No. 2473.

During jury selection, the prosecutor exercised his eleventh peremptory challenge, against Prospective Juror No. 2473. Defense counsel asked "for a side bar after [Juror No. 2473] leaves." The trial court then asked Prospective Juror No. 2473 to "remain in [her] seat for a moment." At the bench and out of the jury's hearing, defense counsel stated that he was "bringing a *Wheeler* motion based on the fact that [Prospective Juror No. 2473 is] part of an identifiable group" and that there appeared to be no race-neutral "basis" to remove her from the jury. Defense counsel also noted that "this is the second African-American within the last few challenges [the prosecution] has tried to take off." The trial court commented that Juror No. 2473's responses to questions had been "very neutral," and then asked the prosecutor for "[his] thoughts." The prosecutor replied that he had "been watching her" and "didn't find her to be as engaging." He found her to be "kind of quiet" and "tuned out," and he "wanted somebody who is a little bit more . . . engaging."

The trial court concluded the prosecutor did not have a race-neutral justification for the peremptory challenge, based on the "lack of questioning" and the fact that the court had not "notice[d] anything [about] her body language." The court ruled that it was going to disallow the challenge. It then ordered that the

9

juror remain seated.  The prosecutor responded, "Okay."  The court then told the prosecutor, "If you would like to exercise a challenge to another juror, you may.  And we will continue the process."  The prosecutor again replied, "Okay" and the court said "All right."

Defense counsel did not ask that the venire be dismissed, nor did he express dissatisfaction with the trial court's remedy.  Instead, he and the prosecutor turned their attention to the next juror in the venire.  Defense counsel asked the prosecutor whether he would "challenge her," adding, "We can talk about that, if you challenge her," and asking the prosecutor to "[t]hink about it."  The prosecutor then passed the jury, accepting the panel as currently constituted.  Defense counsel next thanked and excused a different juror, and jury selection continued with Juror No. 2473, the challenged juror, still seated.

The trial court next conducted its own voir dire of several prospective jurors.  After the prosecutor and both defense attorneys passed the jury for cause and the defense attorneys chose not to exercise any peremptory challenges, the prosecutor excused a male prospective juror, Juror No. 2149.  Another prospective juror, Juror 6931, took the excused juror's seat.  After both defense counsel accepted the panel as currently constituted, the prosecutor announced that he would like to thank and excuse Juror No. 0207.  Defense counsel then said, "Your honor, *I'd ask that she remain* while we have a sidebar." (Italics added.)

At the bench, defense counsel brought a second *Batson-Wheeler* motion based on the prosecutor's use of his peremptory challenge on another African-American, Prospective Juror No. 0207.  The trial court indicated its belief that defense counsel had not established a prima facie case, but even if the defense had done so, the prosecutor had several legitimate race-neutral justifications for exercising this peremptory challenge.  In denying the *Batson-Wheeler* motion as to Prospective Juror No. 0207, the trial court told defense counsel, "*Your request to*

10

*have this juror remain seated* is denied." (Italics added.) Defense counsel offered no comment or clarification in response.

We infer defendant's consent to the trial court's discretionary decision to order a remedy short of outright dismissal of the remaining jury venire based on his counsel's failure to object to the reseating of Juror No. 2473. After defendant's *Wheeler* motion was granted, the trial court proposed the alternative remedy of reseating Juror No. 2473 at a sidebar conference after asking the prospective juror to remain seated. Defense counsel was given a meaningful opportunity to object to the alternative remedy at that time but failed to do so.

We decline defendant's invitation to speculate that his counsel's silence may have signified he was unaware of defendant's right to quash the venire. "We assume that counsel knew the law as it stood at the time of the trial." (*People v. Odom* (1969) 71 Cal.2d 709, 717.) Here, defense counsel, having cited *Wheeler* in arguing that the prosecution had improperly discharged Juror No. 2473 based on race, was familiar with the default remedy of quashing the entire jury venire set forth in that opinion. (*Wheeler*, *supra*, 22 Cal.3d at p. 282.) Subsequently, when defense counsel made his second *Batson-Wheeler* motion, he requested that that discharged juror remain seated in the event his motion was granted, and the trial court highlighted counsel's preference for this remedy when it referred to the second *Batson-Wheeler* motion as defense counsel's "request to have this [discharged] juror remain seated." Defense counsel's request that Juror No. 0207 remain seated while his motion was argued at a sidebar conference indicates that counsel understood the available alternative remedies, and we can infer that counsel would have objected had he wanted a different remedy on the prior occasion.

Accordingly, we conclude that defense counsel's consent to the alternative remedy of reseating the improperly discharged juror can be implied from his

11

failure to object to the proposed remedy.  (*Toro*, *supra*, 47 Cal.3d at pp. 976-977.) As noted above, by impliedly consenting to the alternative remedy, defense counsel waived the right to the default remedy of dismissing the jurors already selected and quashing the remaining jury venire.

### III.  DISPOSITION

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court for further proceedings consistent with this opinion.

CHIN, J.

WE CONCUR:

CANTIL-SAKAUYE, C.J.
BAXTER, J.
CORRIGAN, J.
LIU, J.

**CONCURRING OPINION BY BAXTER, J.**

I agree fully with the majority's reasoning and result on the narrow questions framed for our review. I write separately to highlight an issue presented by the particular circumstances of this case, but not offered for our consideration by the parties. In my view, a strong argument arises that, on the facts before us, there would have been no basis to quash the venire and restart jury selection even if defendant had sought to impose such a procedure.

As the majority explains, *People v. Wheeler* (1978) 22 Cal.3d 258 held that if a party in a criminal case shows the opponent has used peremptory challenges for the purpose of excluding members of a "cognizable group" from the jury, "the court must then conclude that the jury as constituted fails to comply with the representative cross-section requirement." The court must therefore "dismiss the jurors thus far selected" and "must quash any remaining venire," because the complaining party "is entitled to a random draw from an entire venire — not one that has been partially or totally stripped of members of a cognizable group by the improper use of peremptory challenges. Upon such dismissal, a different venire shall be drawn and the jury selection process may begin anew." (*Id.*, at p. 282.)

Later, in *Batson v. Kentucky* (1986) 476 U.S. 79, the United States Supreme Court similarly ruled that the racially discriminatory use of peremptory challenges in a criminal case violates the federal Constitution. However, the high court expressly declined to specify how the states should implement its ruling, leaving

1

to them the remedies to be employed. (*Batson*, at p. 99, fn. 24.) Still later, in *People v. Willis* (2002) 27 Cal.4th 811, we acknowledged that the trial court has discretion to allow jury selection from the current venire to continue, but only "with the assent" of the successful *Wheeler/Batson* complainant. (*Willis*, at p. 821.)

Asked to do nothing else, the majority understandably applies the well-established assumption that a successful *Wheeler/Batson* complainant may either (1) insist on quashing the venire or (2) "assent," through counsel, to a narrower solution. The majority's analysis of what may constitute such "assent" is persuasive. However, I question why the complainant should have *any right at all* to quash the venire where, as here, *only one* prospective juror is the subject of the *Wheeler/Batson* challenge, and it is possible to reseat *that very same juror* as soon as the *Wheeler/Batson* motion is granted. I see no logic or wisdom in a "right to quash" rule as applied to facts like those before us in the instant matter.

I understand the problem that arises when, as perhaps more commonly occurs, a *Wheeler/Batson* motion is granted only after a *pattern* of discriminatory excusals has emerged. In this latter situation, several prospective jurors presumably will already have been wrongly dismissed and cannot be recalled. If that has happened, the representative nature of the venire *has* been irreparably distorted, and the status quo ante cannot be restored. Thus, there may be no fair alternative but to quash the venire and start over.

But in a case like this one, where the *Wheeler/Batson* motion is focused on the excusal of only one prospective juror, there is no attempt to show that other members of a cognizable group have already been improperly excused, and the juror in question has not been released from the courtroom, there may be no reason to cling to the notion that the venire must be quashed unless the complainant agrees otherwise. Under these circumstances, the notion that the

2

venire has been irreparably tainted by improper excusals is questionable.  Rather, it seems likely the status quo ante *can* be restored simply by reseating the single juror against whom the invalid peremptory challenge was exercised.  By this means, the court can ensure that the jury venire has *not* "been partially or totally stripped of members of a cognizable group by the improper use of peremptory challenges."  (*Wheeler*, *supra*, 22 Cal.3d at p. 282.)

For these reasons, justice may well not require that a successful *Wheeler/Batson* complainant in such a case have the absolute right to quash the venire and restart jury selection from scratch with an entirely new panel of prospective jurors.  Applied rigidly to the single-excusal situation, such a rule risks wasting judicial resources, squandering the jury pool, and contributing to the potential for delay and game-playing that, in *Willis*, prompted us to modify *Wheeler*'s absolute insistence on this extreme remedy.

Neither *Wheeler* nor *Willis* addressed what remedies are available, as a matter of right, under the particular "single juror" situation presented by the facts of this case.  It seems appropriate to consider this issue in a case where it is directly presented, and I am prepared to do so.


                                                    BAXTER, J.

**I CONCUR:**

CANTIL-SAKAUYE, C. J.

3

**CONCURRING OPINION BY WERDEGAR, J.**


Addressing the reprehensible practice of a party in a criminal case exercising a peremptory challenge to disqualify a citizen from jury service simply because of the individual's race, the United States Supreme Court in 1986 outlawed the practice as violative of the Fourteenth Amendment's ban on racial discrimination. (*Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*).) The high court later extended the sweep of the *Batson* rule, prohibiting the removal of a prospective juror due to the juror's gender (*J. E. B. v. Alabama ex rel. T. B.* (1994) 511 U.S. 127) or ethnic origin (*Hernandez v. New York* (1991) 500 U.S. 352), and applying *Batson*'s holding to civil trials as well (*Edmonson v. Leesville Concrete Co.* (1991) 500 U.S. 614, 630-631).

California paved the road to *Batson* and its progeny eight years earlier in this court's seminal *Wheeler* decision. (*People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).) Relying in that case on article I, section 16 of the California Constitution, which guarantees the right to a jury trial and, by extension, an impartial jury drawn from a representative cross-section of the community (*Wheeler*, at pp. 265-266, 287), this court held for the first time that the exercise of a peremptory challenge to remove a prospective juror based on the juror's race was unconstitutional. Speaking to the cross-section requirement, *Wheeler* explained that "in our heterogeneous society jurors will inevitably belong to diverse and often overlapping groups defined by race, religion, ethnic or national

1

origin, sex, age, education, occupation, economic condition, place of residence, and political affiliation; that it is unrealistic to expect jurors to be devoid of opinions, preconceptions, or even deep-rooted biases derived from their life experiences in such groups; and hence that the only practical way to achieve an overall impartiality is to encourage the representation of a variety of such groups on the jury so that the respective biases of their members, to the extent they are antagonistic, will tend to cancel each other out."  (*Id.* at pp. 266-267.)

We further explained in *Wheeler* that "when a party presumes that certain jurors are biased merely because they are members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds—we may call this 'group bias'—and peremptorily strikes all such persons for that reason alone, he not only upsets the demographic balance of the venire but frustrates the primary purpose of the representative cross-section requirement.  That purpose . . . is to achieve an overall impartiality by allowing the interaction of the diverse beliefs and values the jurors bring from their group experiences."  (*Wheeler*, *supra*, 22 Cal.3d at p. 276.)  Later cases clarified that "the unconstitutional exclusion of even a single juror on improper grounds of racial or group bias requires the commencement of jury selection anew, or reversal of the judgment where such error is established on appeal."  (*People v. Reynoso* (2003) 31 Cal.4th 903, 927, fn. 8; *People v. Fuentes* (1991) 54 Cal.3d 707, 716, fn. 4.)

Unlike the high court in *Batson*, which declined to address the issue of the appropriate remedy for a violation,**1** our *Wheeler* decision settled the issue for our

---

**1**     On the subject of the appropriate remedy for a violation, the *Batson* court "express[ed] no view on whether it is more appropriate in a particular case, upon a finding of discrimination against black jurors, for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case, [citation], or to disallow the discriminatory challenges and resume selection with

*(Footnote continued on next page.)*

2

state courts.  After much discussion, the *Wheeler* court held that the trial court, after finding a cross-section violation occasioned by the discriminatory use of a peremptory challenge, "must dismiss the jurors thus far selected.  So too it must quash any remaining venire, since the complaining party is entitled to a random draw from an entire venire—not one that has been partially or totally stripped of members of a cognizable group by the improper use of peremptory challenges.  Upon such dismissal a different venire shall be drawn and the jury selection process may begin anew."  (*Wheeler*, *supra*, 22 Cal.3d at p. 282.)  As the majority acknowledges, *Wheeler*'s sanction is still the default remedy (maj. opn., *ante*, at p. 11) and was the only sanction for more than 20 years.

Then, in 2002, we recognized "the need for the availability of some discretionary remedy [for a *Wheeler/Batson* violation] short of dismissal of the remaining jury venire."  (*People v. Willis* (2002) 27 Cal.4th 811, 818 (*Willis*).)  Although the vast majority of *Wheeler/Batson* claims we see on appeal involve a criminal defendant complaining about a prosecutor's exercise of peremptory challenges, *Willis* presented the unusual situation in which a defense counsel was found to be striking White males from the jury in hopes of provoking a mistrial and obtaining a fresh venire.  We recognized in *Willis* that *Wheeler*'s "remedy of mistrial and dismissal of the venire [would] accomplish nothing more than to reward [the defendant's] improper voir dire challenges and postpone trial.  Under such circumstances, and with the assent of the complaining party, the trial court should have the discretion to issue appropriate orders short of outright dismissal of

_____

*(Footnote continued from previous page.)*

the improperly challenged jurors reinstated on the venire, [citation]."  (*Batson*, *supra*, 476 U.S. at p. 100, fn. 24.)

the remaining jury, including assessment of sanctions against counsel whose challenges exhibit group bias and reseating any improperly discharged jurors if they are available to serve." (*Willis*, at p. 821.)

Although *Willis* recognized some flexibility in choosing the remedy for a *Wheeler* violation, we stressed that a party's "waiver or consent is a prerequisite to the use of such alternative remedies or sanctions, for *Wheeler* made clear that 'the complaining party is entitled to a random draw from an entire venire' and that dismissal of the remaining venire is the appropriate remedy for a violation of that right. (*Wheeler*, *supra*, 22 Cal.3d at p. 282.) Thus, trial courts lack discretion to impose alternative procedures in the absence of consent or waiver by the complaining party. On the other hand, if the complaining party does effectively waive its right to mistrial, preferring to take its chances with the remaining venire, ordinarily the court should honor that waiver rather than dismiss the venire and subject the parties to additional delay." (*Willis*, *supra*, 27 Cal.4th at pp. 823-824.)

As *Willis* recognized, the choice of an appropriate remedy is a tactical one belonging to the aggrieved party.[2] Depending on how jury selection has proceeded, counsel may wish to opt for *Wheeler*'s default remedy (quash the venire and begin jury selection anew), to have the offending party admonished but then continue with jury selection without reseating the challenged juror (the remedy in *Willis*),[3] or simply to continue jury selection after the challenged

---

[2] I concur in the majority's holding that counsel can choose the appropriate remedy for a *Wheeler* violation and that a personal waiver from defendant is unnecessary. (Maj. opn., *ante*, at p. 7.)

[3] In *Willis*, following the trial court's decision to sustain the prosecutor's *Wheeler* motion, "[j]ury selection resumed" but "[t]he court did not excuse the venire or reseat any of the improperly excused jurors." (*Willis*, *supra*, 27 Cal.4th at p. 816.)

4

prospective juror is reseated (the remedy in the instant case). Because of the strategic nature of the decision, for the trial court to impose one remedy or another absent counsel's waiver or consent would be improper. (*Willis*, *supra*, 27 Cal.4th at p. 823 ["We stress that such waiver or consent is a prerequisite to the use of such alternative remedies or sanctions . . . ."].)

"Waiver," of course, suggests an *express* relinquishment or abandonment of a *known* right or privilege. (*In re Sheena K.* (2007) 40 Cal.4th 875, 880, fn. 1; *In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2.) "[T]he terms 'waiver' and 'forfeiture' have long been used interchangeably. The United States Supreme Court recently observed, however: 'Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the "intentional relinquishment or abandonment of a known right." [Citations.]' (*United States v. Olano* [(1993) 507 U.S. 725, 733].)" (*People v. Saunders* (1993) 5 Cal.4th 580, 590, fn. 6, quoted with approval in *People v. McKinnon* (2011) 52 Cal.4th 610, 636, fn. 16.)

No such express relinquishment of a known right appears on the record in this case. The majority recognizes as much, for it holds that defendant "*impliedly* consent[ed]" to the alternative remedy of reseating the challenged juror in lieu of quashing the venire (maj. opn., *ante*, at p. 8, italics added), because he "fail[ed] to object to the trial court's proposed alternative remedy *when the opportunity to do so* [*arose*]" (*ibid*.). But defendant's asserted implied consent sounds less like a waiver than a standard forfeiture of an issue by failing to object at trial. Search as one might, no evidence appears that counsel expressly relinquished a known right or privilege.

Although the majority cites three authorities in support of its implied waiver rationale, none supports its holding because each involved facts strongly suggesting that either defendant or defense counsel made a knowing choice. In

5

*Barsamyan v. Appellate Division of Superior Court* (2008) 44 Cal.4th 960, 969-970, counsel represented two unrelated defendants and affirmatively agreed that one defendant could be sent out for trial, necessarily agreeing (albeit tacitly) to waive the speedy trial rights of the second defendant, as counsel could not represent both simultaneously in different trials. In *People v. Gutierrez* (2003) 29 Cal.4th 1196, 1206, the court held the defendant waived his right to be present at trial by his affirmative refusal to exit his cell. In *People v. Toro* (1989) 47 Cal.3d 966, the defendant contended the trial court violated his rights when it instructed the jury on lesser related crimes. The record in that case showed the trial court conferred with defense counsel, listed the instructions it intended to give (which included instructions on lesser related offenses), and told counsel it intended to give instructions on the list " 'absent any objection.' " (*Id.* at p. 977.) Despite such prompting, defense counsel remained silent. Needless to say, no such prompting occurred here.

By too easily finding that counsel made a tacit choice of remedy here, the majority runs a real risk of diluting the power of the historic *Wheeler/Batson* rule. Indeed, one can trace the journey of the jurisprudence in this state from (1) *Wheeler*, *supra*, 22 Cal.3d 258, where the sole remedy was quashing the venire, to (2) *Willis*, *supra*, 27 Cal.4th 811, where this court—on unusual facts— permitted a lesser remedy in the trial court's discretion if counsel waived the *Wheeler* remedy, to (3) this case, where despite averring that *Wheeler* provides the "default remedy," the majority finds counsel impliedly waived the *Wheeler* remedy by his "passive concession" (maj. opn., *ante*, at p. 8). The rule in this case seems essentially equivalent to one in which the wronged party gets *Willis*'s alternative remedy for a *Wheeler* violation unless he or she objects. Indeed, two members of this court would apparently go further, finding a "strong argument" supporting the notion that a trial court could choose not to quash the venire even if

6

a defendant elected that option as his or her chosen remedy for a *Wheeler* violation. (Conc. opn. of Baxter, J., *ante*, at p. 1, joined by Cantil-Sakauye, C. J.) Will the next case in this line find this court adopting a rule that the trial court itself can, in its discretion *and over counsel's objection*, select the remedy for a successful *Wheeler/Batson* motion? And the next case perhaps abolish the *Wheeler* remedy entirely as unnecessary? I am reluctant to join in the erosion of one of the important milestones in this court's jurisprudence.

That the remedy provided by *Wheeler* (and applicable to *Batson* motions as well) may prove disadvantageous to the offending party, and inconvenient to the trial court, is true, but we have no evidence before us that *Wheeler*'s default remedy has proven impractical or unfair. The seriousness of quashing the venire and restarting jury selection from a new panel no doubt provides an incentive to parties not to approach, let alone transgress, the racial, gender, or ethnic origin line when selecting jurors, for fear of having to start jury selection from scratch. So viewed, the *Wheeler* remedy of quashing the venire serves an important function aside from making the wronged party whole; it exerts a kind of gravitational pull on the parties, making them identify and confront their otherwise invisible biases and influencing them to avoid allowing such improper considerations to affect their judgment when selecting a jury. By providing an incentive to refrain from relying on group bias during jury selection, the *Wheeler* remedy thus serves to vindicate the other purposes of the representative cross-section rule aside from ensuring juror impartiality: "[T]he representative cross-section rule also serves other essential functions in our society, such as legitimating the judgments of the courts, promoting citizen participation in government, and preventing further stigmatizing of minority groups." (*Wheeler*, *supra*, 22 Cal.3d at p. 267, fn. 6.)

I joined the *Willis* majority, and I continue to agree that, on the unusual facts in that case, the court was correct to permit an alternative remedy for the

*Wheeler* violation. No such unusual facts are present in this case, however, nor do I join the majority's unwarranted extension of *Willis*. I would instead hold that imposition of a remedy other than that provided in *Wheeler* may be imposed only upon an express and knowing waiver by counsel on the record.

## CONCLUSION

Although I conclude the trial court, after sustaining defendant's *Wheeler* motion, was wrong to continue with jury selection in the absence of counsel's express consent to forgo the default remedy of quashing the venire, this is not a case in which the trial court failed to give any remedy at all for the violation; in such a case, reversal would be required. Instead, because the question of the appropriate remedy for a *Wheeler* violation is one of state law only (*Batson*, *supra*, 476 U.S. at pp. 99-100, fn. 24), and the trial court both sustained defendant's *Wheeler* motion and afforded him a remedy for the error, we apply the standard of review set forth in article VI, section 13 of the California Constitution: "No judgment shall be set aside, or new trial granted, in any cause, . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, . . . the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." As we can but assume the jurors eventually selected were fair and impartial, no reasonable probability exists that defendant Mata would have achieved a more favorable result in his trial had the trial court quashed the venire and begun jury selection anew. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Accordingly, while I do not agree with the majority's analysis, I concur in its conclusion to reverse the decision of the Court of Appeal.

**WERDEGAR, J.**

**I CONCUR:**
**KENNARD, J.**

8

**CONCURRING OPINION BY LIU, J.**


Justice Werdegar's concurring opinion raises important concerns, and I agree that courts must be vigilant not to adopt remedial rules that erode the substance of the constitutional right to a jury selected free of improper discrimination. Further, I agree with Justice Werdegar that quashing the venire, though strong medicine, properly remains the default remedy because of the incentive it gives the parties to affirmatively examine and avoid the possible influence of conscious or unconscious bias. But I join today's opinion because I believe indications short of an express waiver can demonstrate a party's consent to relinquish the right to the default remedy. We would confront a quite different case if a trial court were to order the alternative remedy of reseating an improperly struck juror over the defendant's objection or without giving the defendant a meaningful opportunity to object.

LIU, J.

1

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Mata

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 203 Cal.App.4th 898
**Rehearing Granted**

_____

**Opinion No.** S201413
**Date Filed:** July 8, 2013

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Norman J. Shapiro

_____

**Counsel:**

John P. Dwyer, under appointment by the Supreme Court, and Elizabeth Garfinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Lawrence M. Daniels, Steven D. Matthews, Susan Sullivan Pithey, Mary Sanchez, David Zarmi and Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

John P. Dwyer
Law Offices of John P. Dwyer
601 Van Ness Avenue, Suite E-115
San Francisco, CA  94102
(415) 885-4451

Roberta L. Davis
Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 897-4920